ORIGINAL

LODGED

05 AUG 23 AM 11: 55

FILED

05 AUG 23 AM 11: 58

1  KLEE, TUCHIN, BOGDANOFF & STERN LLP
   DAVID M. STERN (State Bar No. 67697)
2  LAURA L. BUCHANAN (State Bar No. 156261)
   2121 Avenue of the Stars, 33rd Floor
3  Los Angeles, California  90067-5061
   Telephone:    (310) 407-4000
4  Facsimile:    (310) 407-9090

5  Counsel for for Defendants BIJAN CHADORCHI,
   FERESHTEH CHADORCHI, THE CHADORCHI
6  LIVING TRUST



8            UNITED STATES BANKRUPTCY COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10              LOS ANGELES DIVISION

11 In re                          Case No(s).:  LA 99-49349-VZ

13 RODEO CANON DEVELOPMENT         Chapter 7
   CORPORATION,

14                                 REQUEST FOR JUDICIAL NOTICE IN
          Debtor.                  SUPPORT OF THE CHADORCHI
15                                 PARTIES' (A) OPPOSITION TO THE
                                   TRUSTEE'S MOTION FOR ORDER
16                                 APPROVING AGREEMENT TO
                                   RESCIND SETTLEMENT Etc. [Dkt. No.
17                                 491] AND (B) CONDITIONAL
                                   OPPOSITION TO THE TRUSTEE'S
18                                 MOTION FOR AUTHORITY TO SELL
                                   CERTAIN RIGHTS OF ACTION Etc.
19                                 [Dkt. No. 492]

20                                        **Hearing**

22                                 Date:      September 6, 2004
                                   Time:      11:00 A.M.
23                                 Place:     Roybal Federal Building
                                              11:00 A.M.
24                                            Courtroom 1368
                                              255 East Temple Street
25                                            Los Angeles, CA  90012

79504.1

503LQ

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA  90067-5061
TELEPHONE:  (310) 407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

1    Pursuant to the provisions of Rule 201 of the Federal Rules of Evidence ("FRE"),

2    Bijan Chadorchi, Fereshteh Chadorchi, and the Chadorchi Living Trust (the "Chadorchi

3    Parties" or "Defendants") hereby request this Court take judicial notice of the following

4    documents consisting of pleadings and excerpts of pleadings filed in this Court.

5    Pleadings filed in any court of record, including those filed in this Court in the main

6    bankruptcy case (Case No. LA 99-49349-VZ, "the Bankruptcy Case") and the related

7    adversary proceeding (Adversary No. LA 01-01014 VZ), may be judicially noticed. FED. R.

8    EVID. 201; *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971

9    F.2d 244, 248 (9th Cir. 1992) ("[W]e may take notice of proceedings in other courts, both

10   within and without the federal judicial system, if those proceedings have a direct relation to

11   matters at issue.") (citations and quotations omitted); *Escobar-Ramos v. INS*, 927 F.2d 482,

12   485 n.3 (9th Cir. 1990); *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957-58 (9th Cir. 1989);

13   *Wetherbee v. Willow Lane, Inc. (In re Bestway Prods.)*, 151 B.R. 530, 540 (Bankr. E.D. Cal.

14   1993); *In re Applin*, 108 B.R. 253, 257 (Bankr. E.D. Cal. 1989) ("Judicial notice of basic

15   filings in the bankruptcy case is permissible to fill in gaps in the evidentiary record of a

16   specific adversary proceeding or contested matter.").

17   Based on the preceding, Plaintiff requests this Court take notice of the pleadings that

18   are cited in *The Chadorchi Parties' (A) Opposition to the Trustee's Motion for Order*

19   *Approving Agreement to Rescind Settlement etc. [Dkt. No. 491] and (B) Conditional*

20   *Opposition to the Trustee's Motion for Authority to Sell Certain Rights of Action Etc. [Dkt.*

21   *No. 492]* (the "Opposition"), which is being filed concurrently herewith. Such pleadings

22   include the following, which are attached hereto in docket number order with tabs indicating

23   the case number and docket number of each:

24   ///

25   ///

26   ///

27   ///

28   ///

79504.1

1

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE (310) 407-4000

| Case No. | Docket No. | Description |
|---|---|---|
| LA 99-49349 | 89 <br> Pages 1 - 13 | Stipulation among 9615 Brighton Way Partnership, RCDC, and Beverly filed on October 6, 2000 and Agreement dated September 6, 2000 among Yassian, David and David Perry, and the Warnick parties). |
| LA 99-49349 | 182 <br> Pages 1, 3 | Supplement to Beverly Rodeo . . . Objection to Form of Proposed Order . . .; Motion for Reconsideration |
| LA 99-49349 | 193 <br> Pages 1, 4 | Motion for Partial Stay of Order Authorizing Sale of Real Property . . . |
| LA 99-49349 | 247 <br> Pages 1, 4 | Beverly Rodeo's Second Supplement to Amended Motion for Partial Reconsideration of Sale . . . |
| LA 99-49349 | 260 <br> Pages 1, 2, <br> 254 - 256 | Opposition of Fred Yassian and Beverly . . . to First Interim Application . . . of Counsel for the Trustee . . . |
| LA 99-49349 | 270 <br> Pages 1, 2 | Objection to Amended Application to Employ Pryce Parker Hill, LLP as Counsel for Trustee |
| LA 99-49349 | 301 <br> Pages 1, 5 - 9 | Motion for Order Approving the Settlement Agreement . . . between the Chapter 7 Trustee, Fred Yassian and Beverly . . . |
| LA 99-49349 | 302 <br> Pages 1 - 6, <br> 115 - 118, 158 | Declaration of David R. Weinstein in Support of Trustee's Motion for Authority to Compromise With Beverly Rodeo and Fred Yassian |
| LA 99-49349 | 324 <br> Pages 1, 6, 9, 10 | Motion for Order Approving the Settlement Deal Term Sheet . . . |
| LA 99-49349 | 327 <br> Pages 1 - 5 | Declaration of David R. Weinstein in Support of Trustee's Motion for Order Approving the Settlement Deal Term Sheet |
| LA 99-49349 | 329 <br> Pages 1 - 3 | Opposition of [Warnick] Creditors . . . to the Motion of the Chapter 7 Trustee for an Order Approving the Settlement Deal Term Sheet . . . |
| LA 99-49349 | 333 <br> Pages 1, 2, <br> 43, 50 | David Perry and Danny Perry's Request for Judicial Notice Filed in Opposition to Motion for Order Approving Settlement Deal Term Sheet Amongst the Chapter 7 Trustee, Fred Yassian, and Beverly Rodeo Development Corp. |
| LA 99-49349 | 337 <br> Pages 1, 7 | Yassian Parties' Reply to Objections to Trustee's Settlement Motion |
| AD 01-01014 | 1 <br> Pages 1 - 8 | Complaint: 1. To Avoid Post Petition Transfers 2. To Compel Custodians To Turn Over Property of The Estate and For An Accounting |
| AD 01-01014 | 43 <br> Pages 1 - 38 | Defendants' Fred Yassian's and Beverly Rodeo Development Corporation's First Amend Answer to Complaint . . . |

1    Only the foregoing excerpts of particularly pertinent pleadings (with relevant excerpts

2    marked in the margin) are being filed in order to avoid needless bulk.  The entirety of all

3    pleadings cited in the Opposition will be made available to any party or the Court on request.

4    DATED:  August 22, 2005                   Respectfully submitted,

5                                              KLEE, TUCHIN, BOGDANOFF & STERN LLP

6

7                                              By: _____

8                                                  Laura L. Buchanan

9                                              Attorneys for Defendants BIJAN CHADORCHI,
                                               FERESHTEH CHADORCHI and THE

10                                             CHADORCHI LIVING TRUST

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
2121 AVENUE OF THE STARS, 33RD FLOOR
LOS ANGELES, CALIFORNIA 90067-5061
TELEPHONE: (310) 407-4000

79504.1

3

LA 99- 49349
Docket No. 89

**FILED**

ORIGINAL

1  RICHARD L. WYNNE (SBN 120349)
   SHARON M. KOPMAN (SBN 164449)
2  **WYNNE SPIEGEL ITKIN**, A Law Corporation
   1901 Avenue of the Stars, 16th Floor
3  Los Angeles, California  90067
   Telephone:    (310) 551-1015
4  Facsimile:    (310) 551-3059

5  Attorneys for Beverly Rodeo Development,
   a California corporation

6

7

8               **UNITED STATES BANKRUPTCY COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10                    **LOS ANGELES DIVISION**

11  In re                              Case No. LA 99-49349 VZ

12  RODEO CANON DEVELOPMENT,           Chapter 11
    a California Corporation,
13                                     **STIPULATION AUTHORIZING THE**
                                       **SALE OF REAL PROPERTY AND**
14            Debtor.                  **PARTNERSHIP INTEREST AND**
                                       **RESOLVING OBJECTION TO CLAIM**
15                                     **BY BEVERLY RODEO**

16                                     Date:  Not yet set
                                       Time:  Not yet set
17                                     Place: Courtroom 1368
                                              255 East Temple St.
18                                            Los Angeles, CA 90012

19                                     [Proposed Order to be filed prior to
                                           hearing date]
20

21

22        **WHEREAS**, Debtor, Rodeo Canon Development ("Rodeo Canon" and/or

23  "Debtor") and Beverly Rodeo Development Corp. ("Beverly Rodeo" and/or "Buyer") filed

24  a "Joint Motion For Order Authorizing Sale Of Commercial Real Property" ("Sale

25  Motion") on or about August 11, 2000, to sell both the Debtor's partnership interest in

26  the 9615 Brighton Way Partnership, a California general partnership doing business as

27  Golden Triangle Building Partnership ("BWP") and legal title to the real property at 9615

28  Brighton Way, Beverly Hills, California, to Beverly Rodeo;

5442/DEV/P017/Stipulation to Sell.2

00 OCT -6  PM 4: 07

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

BY _____
        DEPUTY CLERK

1    **WHEREAS**, William and Ann Warnick, as individuals, and as Trustees of the

2    Warnick Family Living Trust, and Jill and Allan Warnick (collectively, the "Warnicks"), as

3    secured creditors in the 9615 Brighton Way property, objected to that sale pursuant to

4    11 U.S.C. § 363 ("Opposition");

5    **WHEREAS**, based upon the Opposition of the Warnicks, the Court determined

6    that the Sale Motion would have to be denied based upon the lack of consent of the

7    Warnicks under 11 U.S.C. § 363 (f)(3), and for other reasons;

8    **WHEREAS**, the Court determined that based upon the option granted to an

9    affiliate of the Debtor, that the Court could not issue a § 363 (m) finding that Beverly

10   Rodeo was a good faith purchaser;

11   **WHEREAS**, the Court urged that the Warnicks, Debtor and Beverly Rodeo

12   (collectively the "Parties") attempt to meet and resolve their differences prior to the then

13   scheduled conversion of this chapter 11 case to chapter 7; and

14   **WHEREAS**, the Parties did meet and arrived at a global resolution of the issues

15   raised in the Sale Motion, and the litigation between the Perrys, the Warnicks, and the

16   litigation initiated by Beverly Rodeo.

17   **NOW, THEREFORE**, it is stipulated and agreed as follows:

18   1.    Pursuant to the terms and provisions of the Settlement Agreement

19   attached hereto as Exhibit "1" and the terms and conditions set forth herein, the Parties

20   have resolved their disputes relating to the Warnicks' respective second, sixth and

21   seventh deeds of trust on the real property located at 9615 Brighton Way, Beverly Hills;

22   2.    Pursuant to the Sale Motion, as modified herein, under 11 U.S.C. §§ 363

23   (b)(1) and (h), the Debtor is hereby authorized and directed to sell Debtor's fifty percent

24   (50%) partnership interest in the BWP partnership, and legal or record title to the

25   commercial real property comprised of an office building located at 9615 Brighton Way,

26   Beverly Hills, California, and all personal property and intangible property interests used

27   in connection with the real property and improvements (the "Property") to Beverly

28   Rodeo;

3.    The sale of the Property shall be upon the terms and conditions set forth in the Sale Motion with the exception that the option to Ms. Urman as referenced in the Sale Motion shall be deleted, and the treatment of the Warnicks' second, sixth, and seventh deeds of trust shall be, except as set forth herein, as set forth in the Settlement Agreement, and not as set forth in the Sale Motion, which provides as follows:    The Warnicks consent to the sale of the Property to Beverly Rodeo, free and clear of their second, sixth and seventh deeds of trust, upon receipt of the following payments:

A.    Beverly Rodeo will pay the Warnicks

(1)    $1,150,000 on the date the Order approving this Stipulation and sale ("Order") is entered or October 13, 2000, whichever date is earlier; and

(2)    $1.7 million on October 14, 2000; and

B.    Rodeo Canon will cause $550,000 to be paid to Warnicks on the date the Order is entered or October 13, 2000, whichever date is earlier. While the Settlement Agreement provides that payments A.1 and B. above were to be paid on September 14, 2000, the Warnicks have agreed to postpone payment to the above dates without waiving any rights they may have to secure damages on account of such default and delay from all persons liable therefor other than Rodeo Canon, Tefaha Perry, Beverly Rodeo and Farshid Yassian.

4.    In the event the $1,700,000 that is due by Beverly Rodeo on October 14, 2000 is not paid on that date then by the payment of an additional $15,000 to the Warnicks, on or before on October 14, 2000, Beverly Rodeo shall be given an additional thirty days up to and including November 14, 2000, in which to pay the $1,700,000 balance ("Payment Extension").

5.    The Warnicks' existing seventh deed of trust shall be released and reconveyed to the record title owner of the Property upon the payments made on or before October 13, 2000 by Beverly Rodeo of $1,150,000 and Rodeo Canon of $550,000 as reflected in 3.A.1 and 3.B above.    The existing second and sixth trust deeds of trust shall constitute security for the payment of the installment of the

1  $1,700,000 owing by Beverly Rodeo on October 14, 2000 or November 14, 2000, the

2  Payment Extension date.  Upon payment of the $1,700,000 to the Warnicks by Beverly

3  Rodeo to the Warnicks, the second and sixth trust deeds shall be immediately released

4  and reconveyed to the record title owner of the Property;

5        6.      If Beverly Rodeo and Rodeo Canon make the required payments set forth

6  in Paragraph 3 above to the Warnicks, but the Bankruptcy Court does not approve this

7  Stipulation and the sale of the Property to Beverly Rodeo, then the Warnicks shall

8  assign and transfer to Beverly Rodeo all of their rights, title and interests in their second,

9  sixth and seventh deeds of trust and claims against the Perrys and their related entities

10  relating to the second, sixth and seventh deeds of trust or the Property, and Beverly

11  Rodeo and the Warnicks will exchange mutual releases.

12        7.      Subject to Beverly Rodeo and Rodeo Canon making the required

13  payments to the Warnicks as set forth in Paragraph 3 above and to Wells Fargo and the

14  Small Business Administration as set forth in the Sale Motion, both the transfer of legal

15  or record title to the Property from Debtor to Buyer, and the sale of the Property shall be

16  free and clear of all liens, claims, and encumbrances of any kind with the consent of

17  Beverly Rodeo, the partnership interest co-owner, and the Warnicks as set forth herein;

18        8.      Subject to the Warnicks receiving the payments set forth in Paragraph 3,

19  and a final, non-appealable court Order approving this Stipulation and sale of the

20  Property to Beverly Rodeo being entered, Beverly Rodeo will dismiss its State Court

21  action, Case No. BC 233 457 and Objection to Claim, Case No. LA 00-2488 VZ against

22  the Warnicks.

23        9.      Based upon the consent herein of the Warnicks to the relief requested in

24  the Sale Motion, and the fact that no other creditor or party in interest objected, the Sale

25  Motion shall be granted without necessity for further hearing or notice thereon;

26        10.     The sale of the Property is authorized pursuant to 11 U.S.C. § 363 (f)(2) in

27  that the Warnicks, as secured creditors, are consenting to the sale, pursuant to the

28  terms hereof;

11.     The Buyer is authorized to buy the Property and at the Closing (as defined in the Agreement and Sale Motion) shall pay the amount of $2,899,267.39 to Wells Fargo Bank, N.A. ("Wells Fargo"), and $554,154.13 to the Small Business Administration ("SBA"), unless Wells Fargo and/or the SBA consent to the refinance or assumption of their notes and deeds of trust by the purchaser, Beverly Rodeo.

12.     Beverly Rodeo's fifth deed of trust in the principal amount of $400,000 will be deemed credit bid and constitute part of the purchase price of the Property, along with the payments made by Beverly Rodeo to the Warnicks, and payments to all other secured and unsecured creditors herein.

13.     Beverly Rodeo's $250,000 initial deposit shall be credited against the purchase price and the Closing shall take place within 30 days from the date of the entry of the Order approving this sale and Stipulation. If the Closing is not complete within 30 days after entry of the Order, Buyer shall be able to obtain an additional 30 days to complete the Closing by depositing another $250,000 in to the escrow account ("Extension Deposit"). The Extension Deposit will also be credited against the purchase price.

14.     Real property taxes will be pro rated as of the date of the Closing, and Buyer shall pay any and all real property taxes on the Property that Debtor is unable to pay.

15.     The usual escrow fees will be split between Buyer and Debtor, and Debtor shall be responsible for all recording fees and required documentary transfer taxes. Buyer shall pay any and all escrow, recording, and documentary transfer tax fees on the Property that Debtor is unable to pay.

16.     Within five days of the Closing Date (as defined in the Agreement and Sale Motion), Debtor will pay the Office of the United States Trustee, all trustee's fees due and required in full and Debtor will also transfer to Wynne Spiegel Itkin, a Law Corporation's, client trust account the amount of $50,000 to be held in trust for payment

1    of final compensation and reimbursement pursuant to 11 U.S.C. § 330 (a) of Debtor's

2    counsel.

3        17.    The sale of the Property is free and clear of all liens, claims, and

4    encumbrances of any kind, except for those obligations specifically delineated as

5    assumed herein.

6        18.    The sale of the Property is pursuant to 11 U.S.C. § 363 (m), and the Court

7    must find expressly that Buyer is a good faith purchaser.

8        19.    The Court's order authorizing this sale shall be deemed an Order for

9    cause pursuant to 11 U.S.C. § 349 (b) that vests the Property in Buyer.

10   Notwithstanding § 349 (b) (3) that would require the re-vesting of Property of the estate

11   in the entity in which such Property was vested immediately before the commencement

12   of the case, this Order shall be an Order for cause ordering otherwise, and the Property

13   shall not re-vest with the Debtor in the event of a future dismissal of this case.

14       20.    The parties hereto shall execute such other and further documents as may

15   be required to effectuate the terms of this Stipulation and the Settlement Agreement. In

16   the event any party fails to so execute any required documents, the Bankruptcy Court

17   reserves jurisdiction to order that the Clerk of the Court or some other party shall be

18   designated to execute necessary documents as the attorney in fact for said party.

19

20

21

22

23

24

25

26

27

28

DATED: October 4, 2000

**9615 BRIGHTON WAY PARTNERSHIP, A CALIFORNIA GENERAL PARTNERSHIP DOING BUSINESS AS GOLDEN TRIANGLE BUILDING PARTNERSHIP**

By: _____

FARSHID YASSIAN President of Beverly Rodeo Development Corp. A Ca. Corporation and General Partner of 9615 Brighton Way Partnership

By: _____

DANNY PERRY President of Rodeo Canon Development Inc. A Ca. Corporation and General Partner of 9615 Brighton Way Partnership

**RODEO CANON DEVELOPMENT CORP.**

By: _____

DANNY PERRY
President

**BEVERLY RODEO DEVELOPMENT CORP.**

By: _____

FARSHID YASSIAN
President

5442/DEV/P017/Stipulation to Sell.2

7

**WARNICKS**

By: _____
WILLIAM WARNICK
As Trustee of the Warnick Family
Living Trust

By: _____
ANN WARNICK
As Trustee of the Warnick Family
Living Trust

By: _____
ALLAN WARNICK, an individual

By: _____
JILL WARNICK, an individual

Sept. 6, 2000

This Agreement is entered into on Sept 6, 2000 by and among William Warnick, individually and on behalf of William and Ann Warnick, the William and Ann Warnick Family Living Trust, Allen Warnick and Jill Warnick (herein "Warnick"), on the one hand and David Perry and Danny Perry individually and on behalf of themselves, Tehani Perry, Brent Lifestyles Holdings Inc, Rodeo Canon & Associates, Rodeo Canon Development Corporation (RCDC), 9615 Brighton Way Partnership, Reefshare, Ltd. a Hawaiian Corporation (Reefshare), Pacifica Resort Holdings, Inc. (Pacifica) (herein "Perry"), on the second hand and Farshid Yassian ("Yassian") on the other hand and is made with reference to the following facts:

A. Warnick loaned Perry in excess of $6,000,000 in a series of loans made either to David Perry and Danny Perry individually or to entities with which they are associated.

B. The Warnick loans were memorialized by a number of promissory notes, were guaranteed by Perry and were secured by trust deeds on 9615 Brighton Way, Beverly Hills, CA; 2314 Mariposa Mall, Fresno; Pacifica's property in Lake Tahoe; by RCA's stock in Pacifica and Reefshare and by a Personal guaranty and First Amendment to Personal guaranty.

C. The Perrys failed to repay the Warnick

9

loans and Warnick commenced foreclosing on
security for the loans and commenced litigation.
D. There are now pending the following
actions:

(1) Warnick v Perry, LASC Case No.
BC 200 691
(2) Perry v Warnick, LASC Case No.
BC 285 959,
(3) Various bankruptcies involving
RCA, RCDC, Beverly Lifestyles, Pacifica
Resort Holdings Inc

Beverly Rodeo v
Warnick, et al
USA Case No. BC 233457

E. The parties have resolved their disputes
and desire to settle them as follows:

see P 13

1. Perry and Yassian shall pay Warnick
$3,400,000, $1,700,000 concurrently with the
execution of a written agreement (but in no
event later than Sept. 14 2000 and the balance
on or before October 14, 2000. If the balance
is not paid on or before October 14, 2000 then
in consideration of the payment of $15,00
Perry and Yassian shall have an additional
30 days, up to Nov. 6, 2000 to pay said
balance of $1,700,000.

2. Concurrently with the execution of a
written agreement but no later than September
14, 2000 Perry will transfer to Warnick
100% fee simple title to the Fresno property

EXHIBIT   1

(2314 Mariposa Mall) subject only to existing
monetary encumbrances.

3. Concurrently with the execution of
written Agreement Perry will cause 100% in
in Pacifica and Redshare to be transferred
to Warnick, in such manner as Warnick
deems appropriate, to wit by transfer of sh
or by foreclosure of Perry's in such actions as
required to have the bankruptcy court to

4. Concurrently upon the receipt of
first $1,700,000 Warnick will cooperate in
dismissing all pending litigation and in
the dismissal of the bankruptcies from
Perry, Pacifica and Redshare to Warnick's

5. Upon the Court's approval of the
Agreement, to the extent required and the
dismissal of the litigation and

5. The parties agree to cause any
Court approvals required to be secured and
Perry agrees to pay any Trustees' or
Administrative fees payable in such
Bankruptcies.

6. Upon the payment of the As sea
for payment of the second installment of
$1,700,000 the 2nd and 6th trust deeds to
remain on 9615 Brighton Way and Yoan
and Perry agree that the second trust deed
will be security for $1,350,000 and will
bear interest at 4% commencing Nov. 1,
and is in all respects ratified and is due

EXHIBIT

payable on Nov 6, 2000. Yassian and [...] that the 6th Trust on 9615 Brighton Way will be security for $350,000, will be due on Nov. 6 2000 [...] is ratified and will bear interest at 10% from Nov. 6, 2000 [...] $2,850,000. Yassian guaranties the payment of the $3,400,000 and consents to the security interests on 9615 Brighton Way but will have no other obligations hereunder.

8. After the payment of the $3,400,000 and the transfer of Fresno, Peephone & Pacifica to Warnick, all security interests Warnick has will be ~~or have been~~ released and all notes returned to Perry marked paid/cancelled.

9. ~~The parties~~ Upon the payment of the $3,400,000 Warnick agrees to call Wells Fargo and request that they accept less than all that David Perry owes on the judgment Wells Fargo secured against him.

10. The parties agree that this agreement is binding and enforceable @ CCP §664.6 or otherwise but nonetheless agree to execute a more formal agreement as soon as possible.

11. After Warnick has received repayment of $2,800,000 plus monies advanced hereafter (with interest on the advances at 10%) from sale proceeds of Peephone & Pacifica, Perry shall be paid the next $1,500,000 and thereafter the parties (Warnick & Perry) shall each receive

EXHIBIT   1

50% of the income or sale proceeds generated by Raphael and Pacifica.

12. Yassian agrees to contribute $100,000 towards the repayment of the Wells Fargo judgment and Perry agrees to cause such money to be paid to Wells Fargo in partial satisfaction of the judgment against Perry and Perry agrees to hold Warnick free and harmless from any liability to Wells Fargo for such judgment.

13. Of the $3,400,000 - Yassian agrees to pay $2,850,000 and Perry shall pay $550,000. The first installment with ~~be the~~ of $1,700,000 paid on or before Sept. 14 will be paid $1,150,000 by Yassian and $550,000 by Perry. The second installment of $1,700,000 shall be paid solely by Yassian.

14. Perry agrees to defend
and hold Warnick harmless
from any liability, loss, cost
+ expense in ~~an~~ any action brought
in connection with Raphael arising
prior to this date up to the $24,000
in attorneys fees only

William Warnick

DAVID PERRY

DAN PERRY

FARSHID YASSIAN

APPROVED AS TO FORM & CONTENT

_____ Khoury, Attorney for Warnick

EXHIBIT    1                3

(2314 Mariposa Mall) subject only to existing monetary encumbrances.

13. Concurrently with the execution of a

LA 99-49349

DOCKET NO. 182

ORIGINAL

1  DAVID R. WEINSTEIN (State Bar No. 082881)
   ALEXANDRA P. OLENCZUK (State Bar No. 172937)
2  WEINSTEIN & EISEN
   A Professional Corporation
3  1925 Century Park East, Suite 1150
   Los Angeles, California 90067-2712
4  Telephone (310) 203-9393
   Facsimile (310) 203-8110
5
   Attorneys for Fred Yassian and
6  Beverly Rodeo Development Corporation
7

```
FILED

APR - 4 2001

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ Deputy Clerk
```

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                 LOS ANGELES DIVISION

11

12  In re                          )    Bk. No. LA 99-49349-VZ
                                    )       [Chapter 11]
13                                  )
    RODEO CANON DEVELOPMENT         )
14  CORP.,                          )    SUPPLEMENT TO BEVERLY RODEO
                                    )    DEVELOPMENT CORPORATION'S
15            Debtor.               )    OBJECTION TO FORM OF PROPOSED
                                    )    ORDER FOR SALE OF REAL
16                                  )    PROPERTY;
                                    )    MOTION FOR PARTIAL
17                                  )    RECONSIDERATION;
                                    )    DECLARATION OF DAVID R.
18                                  )    WEINSTEIN
                                    )
19                                  )
                                    )    DATE:    March 22, 2001
20                                  )    TIME:    11:30 a.m.
                                    )    PLACE:   Courtroom 1368
21                                  )             255 E. Temple Street
                                    )             Los Angeles, CA  90012
22  _____)

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

H:\HOME\CLIENT\141?\1417.005.wpd
1/4/01 (12:09 pm) lcr

B.    **Summary of Objections; Partial Reconsideration**.

In summary, Beverly Rodeo now tenders two types of objections to the Proposed Sale Order: objections to form and format; and objections based on the concern that as presented, the Proposed Sale Order will implicitly resolve the ownership issues the Court specifically reserved for another proceeding.[2]    Because Beverly Rodeo recognizes that the latter type of objection may implicate the rulings themselves, Beverly Rodeo has joined herein a Partial Motion for Reconsideration, solely for the purpose of facilitating a review of the latter issue in the present context.

C.    **Intended Result**.

Beverly Rodeo does not oppose, and indeed seeks to facilitate, the transfer of title to the subject property, 9615 Brighton Way, Beverly Hills, California 90210 (the "Property").  That is the reason for the objections to form.

Beverly Rodeo also seeks to facilitate the payment of transaction costs and lien interests that are not disputed, so long as the payment of them will not implicitly or unintentionally resolve, or render moot, the ownership litigation.  In this respect, Beverly Rodeo argues that the undisputed portions of the Warnick Creditors' lien claims can and should be paid immediately out of the sale (a total of approximately $1,050,000) but that the balance of their claims must be transferred to the proceeds of sale.

///

///

---

[2]    In adversary proceeding no. LA 01-01014-VZ, the Trustee sued Fred Yassian and Beverly Rodeo relative to assertedly avoidable transfers. Those theories depend on the factual premise that the real property in question is the Debtor's.  Defendants have counterclaimed to put the ownership question in issue and will shortly join other necessary parties.

LA 99- 49349
DOCKET No. 193

1  DAVID R. WEINSTEIN (State Bar No. 082881)
   ALEXANDRA P. OLENCZUK (State Bar No. 172937)
2  WEINSTEIN & EISEN
   A Professional Corporation
3  1925 Century Park East, Suite 1150
   Los Angeles, California 90067-2712
4  Telephone (310) 203-9393
   Facsimile (310) 203-8110
5
6  Attorneys for Fred Yassian and
   Beverly Rodeo Development Corporation
7
8              UNITED STATES BANKRUPTCY COURT
9              CENTRAL DISTRICT OF CALIFORNIA
10                  LOS ANGELES DIVISION
11
12  In re                          )   Bk. No. LA 99-49349-VZ
                                   )      [Chapter 7]
13                                 )
    RODEO CANON DEVELOPMENT        )   MOTION FOR PARTIAL STAY OF
14  CORP.,                         )   ORDER AUTHORIZING SALE OF REAL
                                   )   PROPERTY (9615 BRIGHTON WAY,
15                                 )   BEVERLY HILLS, CA 90210) FREE
              Debtor.              )   AND CLEAR OF LIENS AND
16                                 )   INTERESTS PENDING MOTION FOR
                                   )   PARTIAL RECONSIDERATION;
17                                 )   DECLARATION OF DAVID R.
                                   )   WEINSTEIN IN SUPPORT THEREOF
18                                 )
                                   )
19  ─────────────────────────────  )
                                   )   [HEARING TO BE SET BY COURT]
20
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

H:\HOME\CLIENT\1417\1417.010.wpd
4/9/01 (2:01 pm) jc

1   Beverly Rodeo has commenced adversary proceedings to determine the extent of its

2   interest in the Real Property and to determine the enforceability of the Warnicks'

3   Disputed Trust Deeds against the Property.[4] The Court, at the hearing on March 22,

4   2001, acknowledged that the Brighton Way Partnership's interest in the Real

5   Property could not be determined without an adversary proceeding.  The Settlement

6   with the Warnicks infringes upon the property interest of the Partnership which

7   Beverly Rodeo is seeking to establish in its adversary proceedings: if the Brighton

8   Way Partnership did in fact own the Real Property, the Trustee should not be

9   allowed to use any of Beverly Rodeo's share of the proceeds to pay the Warnicks,

10   unless it is established that the Warnick's liens can be charged against Beverly

11   Rodeo's interest in the Real Property.

12        The Motion for Partial Reconsideration is set for hearing on May 16, 2001.

13   Beverly Rodeo's interest in the sale proceeds would be prejudiced if the Trustee pays

14   the Warnicks any amount in excess of $1,050,000.00 prior to the hearing on the

15   Motion for Reconsideration. **Accordingly, Beverly Rodeo is requesting that the**

16   **Court enter an order partially staying the Sale Order, pending the hearing**

17   **on the Motion for Reconsideration.  By this Motion, Beverly Rodeo seeks to**

18   **stay the Sale Motion only with respect to the Trustee's payment to the**

19   **Warnicks of any amount in excess of $1,050,000.00.**

20   ///

21   ///

22   ///

23

24       [3] (...continued)

25   portion of their 2nd Trust Deed).

26       [4]     Beverly Rodeo believes that (1) the 9615 Brighton Way
Partnership (the "Brighton Way Partnership"), of which Beverly Rodeo and

27   the Debtor are the partners, had been the beneficial owner of the Real
Property; and (2) the Disputed Trust Deeds were not authorized by the

28   Partnership.

1    As the Debtor's inability to encumber the Real Property was a

2  matter of public record (or the public record was sufficient to put the Warnicks on

3  inquiry notice of Beverly Rodeo's interest in the Real Property and the Debtor's

4  inability to encumber the Real Property without Beverly Rodeo's agreement), Beverly

5  Rodeo disputes the effectiveness of the 6th Trust Deed.

6         **3.   The 7th Trust Deed.**

7    In August, 1998, the Debtor obtained a loan in the amount of

8  $1,500,000.00 from William and Ann Warnick, as Trustees of the William and Ann

9  Warnick Family Trust (the "1998 Loan").   The 1998 Loan was secured by a 7th Trust

10  Deed on the Real Property.   However, the Debtor did not obtain Beverly Rodeo's

11  written authorization for the 7th Trust Deed, in direct contravention of the

12  Amendment to Partnership Agreement as referenced in the recorded Memorandum

13  of Agreement.

14    As the Debtor's inability to encumber the Real Property was a

15  matter of public record (or the public record was sufficient to put the Warnicks on

16  inquiry notice of Beverly Rodeo's interest in the Real Property and the Debtor's

17  inability to encumber the Real Property without Beverly Rodeo's agreement), Beverly

18  Rodeo disputes the effectiveness of the 7th Trust Deed as against Beverly Rodeo's

19  partnership interest in the proceeds of the sale.[9]

20

21    **C.   The Sale of the Real Property and the Estate's Settlement With**

22         **the Warnicks.**

23    At the hearing held March 22, 2001, the Court approved the sale of

24  the Real Property to Chadorchi for $10,500,000.00.   Beverly Rodeo does not attempt

25  to stand in the way of the Real Property being transferred to Chadorchi free and

26

27  ─────────────

28  [9]    The 7th Trust Deed actually acknowledges that it is effective
only as against the Debtor's or David Perry's interest in the Real Property.

1  clear of all interests and encumbrances.  However, Beverly Rodeo believes that since

2  under California Law the Brighton Way Partnership had an ownership interest in

3  the Real Property, it also has an ownership interest in the proceeds of the sale.  The

4  Bankruptcy Estate's interest in the proceeds is limited to the Debtor's partnership

5  interest in the Brighton Way Partnership.[10]

6          It is undisputed that the legitimate secured creditors of the Brighton

7  Way Partnership and the closing costs should be paid from the proceeds of the sale of

8  the Real Property.  Thus, the following creditors should be paid in the following

9  amounts:

| | | | |
|---|---|---|---|
| 10 | 1. | Wells Fargo Bank | $3,000,000.00 |
| 11 | 2. | Allan & Jill Warnick | |
| 12 | | (undisputed portion of 2nd T.D.) | $1,050,000.00 |
| 13 | 3. | U.S. Small Business Admin. | $ 444,000.00 |
| 14 | 4. | U.S. Small Business Admin. | $ 68,000.00 |
| 15 | 5. | Property Taxes | $ 35,000.00 |
| 16 | 6. | Closing cost to Beverly Hills Escrow | $ 230,000.00 |
| 17 | 7. | 5% Commission to Nelson Shelton | $ 525,000.00 |
| 18 | | TOTAL: | $5,352,000.00 |

19

20  [10]    Property interests are created by state law. *Butner v. United
States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918 (1979). In California, property

21  acquired with partnership funds is ***presumptively*** partnership property,
**even if it was acquired in the name of one partner without an**

22  **indication in the instrument transferring title of the partner's**
**capacity as a partner.** Cal.Corp. Code § 16204(c). Moreover, even though

23  the Trustee would otherwise be a bona fide purchaser of the Real Property

24  from the Debtor, the Trustee, *qua bona fide purchaser*, is burdened with the
constructive notice and inquiry notice afforded the world by the recorded

25  Memorandum of Agreement. Thus, Beverly Rodeo has more than a colorable

26  claim to an ownership interest in the proceeds of the sale. While the
Bankruptcy Estate arguably may have had an interest in the Real Property

27  via the Debtor's partnership interest in the Brighton Way Partnership, the
extent of the respective interests of the Estate and Beverly Rodeo has yet to

28  be determined.

LA 99-49349

DOCKET NO. 247

FILED

**ORIGINAL**

1  DAVID R. WEINSTEIN (State Bar No. 082881)
   ALEXANDRA P. OLENCZUK (State Bar No. 172937)
2  WEINSTEIN, EISEN & WEISS
   A Professional Corporation
3  1925 Century Park East, Suite 1150
   Los Angeles, California 90067-2712
4  Telephone (310) 203-9393
   Facsimile (310) 203-8110

01 JUL 24  PM 2:07

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

BY _____
         DEPUTY CLERK

5

6  Attorneys for Beverly Rodeo
   Development Corp. and Fred Yassian

7              UNITED STATES BANKRUPTCY COURT

8              CENTRAL DISTRICT OF CALIFORNIA

9                   LOS ANGELES DIVISION

10  In re                          )   Bk. No. LA 99-49349 VZ
                                   )   [Chapter 7]
11                                 )
    RODEO CANON DEVELOPMENT        )   BEVERLY RODEO'S SECOND
12  CORPORATION,                   )   SUPPLEMENT TO AMENDED MOTION
                                   )   FOR PARTIAL RECONSIDERATION OF
13              Debtor.            )   SALE AND COMPROMISE ORDERS;
                                   )   DECLARATION OF DAVID R.
14                                 )   WEINSTEIN
                                   )
15                                 )   DATE:    August 2, 2001
                                   )   TIME:    11:00 a.m.
16                                 )   PLACE:   Courtroom 1368
                                   )            255 E. Temple Street
17  _____)            Los Angeles, CA 90012

18       This Second Supplement is filed by Beverly Rodeo Development Corp. and Fred

19  Yassian (collectively, "Beverly Rodeo") in connection with their *Amended Motion for*

20  *Partial Reconsideration of (1) Order Authorizing Sale of Real Property (9615 Brighton*

21  *Way, Beverly Hills, CA 90210) Free and Clear of Liens and Interests; and (2) Order*

22  *Approving the Settlement Agreement and Mutual Release Between the Chapter 7*

23  *Trustee and William Warnick, Ann Warnick, the William and Ann Warnick Family*

24  *Living Trust, Jill Warnick and Allan Warnick* (the "Reconsideration Motion").

25  / / /

26  / / /

27  / / /

28  / / /

c:\h\c\1417.055
/24/01 (10:41 am) jc

247...

1  Disputed Trust Deeds (the "Disputed Payments").  The Trustee obtained net proceeds

2  of approximately $3,000,000.

3

4     **C.  Reconsideration Proceedings.**

5        Over two weeks before the closing, on April 9, 2001, Beverly Rodeo timely

6  filed its Reconsideration Motion.  In the Reconsideration Motion, Beverly Rodeo

7  argued principally that the adequate protection rights of Beverly Rodeo and the

8  Partnership in relation to the Trustee's sale of the Property were violated by the

9  terms of the Sale and Compromise Orders that allowed the Disputed Payments to be

10  made to the Warnick Creditors before determination of the underlying question of

11  the Partnership's rights to the Property (and hence, the proceeds of sale).  It should

12  be noted that the Sale and the Compromise resulted in separate orders.  This was

13  appropriate. . .they are two separate transactions, and must be conceptually placed

14  in sequence.

15        Beverly Rodeo seeks reconsideration of the Sale Order only insofar as it

16  contains a payment provision for the Disputed Payments.  Beverly Rodeo does not

17  here seek to reconsider the Sale, or the resultant adequacy of the protection that

18  would have been afforded by transferring the Fifth Trust Deed and the Ownership

19  Interests to $5,352,000.  Beverly Rodeo's main thrust is reconsideration of the

20  Compromise Order but again, only in part.  Beverly Rodeo does not seek

21  reconsideration of the compromise (reduction) of debt between Rodeo Canon's estate

22  and the Warnick Creditors.  Beverly Rodeo primarily seeks reconsideration of the

23  authorization for the Disputed Payment which did damage to the adequate

24  / / /

25  / / /

26

27

28

DOCKET No. 260

FILED

1  DAVID R. WEINSTEIN (State Bar No. 082881)
   ALEXANDRA P. OLENCZUK (State Bar No. 172937)
2  WEINSTEIN, EISEN & WEISS
   A Professional Corporation
3  1925 Century Park East, Suite 1150
   Los Angeles, California 90067-2712
4  Telephone (310) 203-9393
   Facsimile (310) 203-8110
5
6  Attorneys for Beverly Rodeo
   Development Corp. and Fred Yassian

01 AUG -2 PM 3: 49

U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

BY: ___Becc 3___ DEPUTY

7
8              UNITED STATES BANKRUPTCY COURT
9              CENTRAL DISTRICT OF CALIFORNIA
10                LOS ANGELES DIVISION
11

12  In re                          )   Bk. No. LA 99-49349 VZ
                                   )   [Chapter 7]
13                                 )
    RODEO CANON DEVELOPMENT        )   OPPOSITION OF FRED YASSIAN AND
14  CORPORATION,                   )   BEVERLY RODEO DEVELOPMENT
                                   )   CORPORATION TO FIRST INTERIM
15          Debtor.                )   APPLICATION FOR ALLOWANCE AND
                                   )   PAYMENT OF FEES AND
16                                 )   REIMBURSEMENT OF EXPENSES OF
                                   )   COUNSEL FOR THE TRUSTEE;
17                                 )   DECLARATION OF DAVID R.
                                   )   WEINSTEIN IN SUPPORT THEREOF
18                                 )
                                   )   DATE:     August 16, 2001
19                                 )   TIME:     2:00 p.m.
                                   )   PLACE:    Courtroom 1368
20  _____ )             255 E. Temple Street
21                                                Los Angeles, CA 90012
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

b.\h\c\1417.074
8/2/01 (12.03 pm)

1   Beverly Rodeo Development Corporation ("Beverly Rodeo") and Fred Yassian

2   ("Yassian"), file the following Opposition to the *First Interim Application for*

3   *Allowance and Payment of Fees and Reimbursement of Expenses of Counsel for the*

4   *Trustee* (the "Application"):

5                                        **I.**

6                                 **INTRODUCTION**

7   Presently before the Court is the Fee Application of Pryce Parker Hill, LLP

8   ("PPH"), general bankruptcy counsel for the Chapter 7 Trustee, Robert Pryce (the

9   "Trustee"). Upon his appointment, the Trustee, who is an attorney, employed his

10  own firm as counsel for the estate, and assumed control of the estate's principal

11  assets, the Debtor's record title to the commercial real property located at 9615

12  Brighton Way, Beverly Hills, California plus the Debtor's partnership interest in a

13  partnership formed by the Debtor and Beverly Rodeo to acquire and manage the

14  property. PPH is seeking approval of $123,921.50 in fees and $15,322.20 in costs.

15  A close look at the Application and the pertinent circumstances, reveals that

16  PPH's request for fees and costs must be denied in its entirety, or at the very least,

17  significantly reduced. PPH has a significant, undisclosed conflict of interest, which

18  has exposed the bankruptcy estate to liability. Further, the Application does not

19  conform to the U.S. Trustee Guidelines for fee applications in numerous respects.

20  Moreover, much of the work done by PPH is not compensable as attorneys' work,

21  while the arguably "legal" work was poorly and inefficiently performed and reflects a

22  wholesale lack of billing judgment. Finally, there are no free-and-clear funds in the

23  estate at the present time, so no fees should be approved for payment. Accordingly,

24  Beverly Rodeo and Yassian request that the Application be denied in its entirety.

25  / / /

26  / / /

27  / / /

28  / / /

h:\h\c\1417.074
8/2/01 (12:03 pm)

05-01-2001  11:03AM                                                    13102038110    P.03

Page 3

Escrow # 30680-IL

| | SELLER | | | | BUYER | |
|---|---|---|---|---|---|---|
| | DEBITS | CREDITS | | | DEBITS | CREDITS |
| | | | [Total Payoff $1,125,616.44]<br>Principal Balance<br>Interest on<br>  Principal Balance<br>  from January 31,<br>  2001 to April 25,<br>  2001 | | | |
| | 1,100,000.00<br>25,616.44 | | | | | |
| | | | PAYOFF CHARGES to<br>  William and Ann<br>  Warnick, Trustees<br>  [Total Payoff $767,465.75]<br>Principal Balance<br>Interest on<br>  Principal Balance | | | |
| | 750,000.00<br>17,465.75 | | | | | |
| | | | NEW 1ST TRUST DEED<br>  TO BANK LEUMI USA<br>  [Total Loan Charges $0.00]<br>Tax Service : POC<br>  $399.00<br>Document Fee  POC<br>  $250.00<br>Flood Certification<br>  POC $24.50<br>Engineering Report<br>  POC $1,100.00<br>Phase I Enviromental<br>  Report  POC $1800.00<br>Loan Fee  POC<br>  $29,688.00 | | | |
| | | | PRORATIONS AND ADJUSTMENTS | | | |
| | | 12,347.28 | Taxes at 33674.39/6<br>  mo. from 04/25/01 to<br>  07/01/01 | | 12,347.28 | |
| | 17,202.75 | | Rent Prorations | | | 17,202.75 |
| | | | COMMISSION<br>Nelson Shelton &<br>  Associates | | | |
| | 525,000.00 | | | | | |
| | | | Credit from Nelson<br>  Shelton & Associates | | | 100,000.00 |
| | | | TITLE TO FIDELITY<br>  NATIONAL TITLE<br>  COMPANY | | | |
| | 17,456.00 | | C.L.T.A. Title<br>  Policy Fee | | | |
| | | | A.L.T.A. Title<br>  Policy Fee | | 3,096.00 | |
| | 115.80 | | Messenger Fee | | | |
| | 62.50 | | Sub Escrow Fee | | 62.50 | |
| | 50.00 | | Tracking Fee | | | |

page 254

| | | |
|---|---|---|
| 87.50 | Wire Fees | 87.50 |
| | ESCROW TO BEVERLY HILLS ESCROW | |
| 15,750.00 | Escrow Fee | 15,750.00 |
| | Loan Tie-in Fee | 500.00 |
| 53.50 | Mess/Fed Ex/Wire fees | 127.00 |
| | Interest Bearing Account Set Up Fee | 25.00 |
| 50.00 | Drawing Fee | 50.00 |
| | RECORDING CHARGES TO FIDELITY NATIONAL TITLE COMPANY | |
| 14.00 | Recording Grant Deed | |
| | Recording Trust Deed | 55.00 |
| 63.00 | Sub & Recon | |
| 30.00 | Order to Sell | |
| 30.00 | Hazardous Substances | |
| 42.00 | Delayed Reconveyance | |
| | TAX CHARGES TO FIDELITY NATIONAL TITLE COMPANY | |
| 9,460.00 | Documentary Transfer Tax | |
| 37,051.82 | 2nd Installment taxes 2000-2001 | |

05-01-2001  11:03A                                              13102038110    P.04

APR.27.2001   3:40PM   BEVERLY HILLS ESCROW                    NO.073   P.3

Page 3

Escrow # 30680-LL

| | SELLER | | | BUYER | |
| DEBITS | CREDITS | | DEBITS | CREDITS |
|---|---|---|---|---|
| | | OTHER DISBURSEMENTS | | |
| | | Pacific Associates | 8,234.00 | |
| | | Insurance Agency for | | |
| | | Fire Insurance | | |
| | | LGS for Disclosure | 64.95 | |
| | | Report | | |
| | | Pacific Associates | 17,250.00 | |
| | | Insurance Agency for | | |
| | | Earthquake Insurance | | |
| 3,181,057.42 | | NET PROCEEDS | 113,716.76 | |
| | | REFUND | | |
| 10,512,347.28 | 10,512,347.28 | TOTALS | 10,671,365.99 | 10,671,365.99 |

DOCKET NO. 270

FILED

1   DAVID R. WEINSTEIN (State Bar No. 082881)
    WEINSTEIN, EISEN & WEISS
2   A Professional Corporation                        01 AUG 24 PM 12: 29
    1925 Century Park East, Suite 1150
3   Los Angeles, California 90067-2712
    Telephone (310) 203-9393
4   Facsimile (310) 203-8110                           BY_____

5   Attorneys for Beverly Rodeo
    Development Corp. and Fred Yassian
6

7                   UNITED STATES BANKRUPTCY COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9                        LOS ANGELES DIVISION

10

11  In re                              )   Bk. No. LA 99-49349 VZ
                                        )   [Chapter 7]
12  RODEO CANON DEVELOPMENT             )
13  CORPORATION,                        )   OBJECTION TO AMENDED
                                        )   APPLICATION TO EMPLOY PRYCE
                                        )   PARKER HILL, LLP AS GENERAL
14         Debtor.                      )   COUNSEL FOR TRUSTEE
                                        )
15                                      )
                                        )   [HEARING NOT SET]
16  _____    )

17         Creditors Beverly Rodeo Development Corporation and Fred Yassian (the

18  "Objectors") object to the employment of Pryce Parker Hill, LLP as counsel for Robert

19  D. Pryce, Trustee as such employment is referred to in the *Amendment to Application*

20  *to Employ Pryce Parker Hill, LLP as General Counsel Pursuant to 11 U.S.C. § 2014*

21  (the "Amended Employment Notice") served herein by Pryce Parker Hill, LLP (the

22  "Firm") and Robert D. Pryce, Trustee (the "Trustee").

23         Without limitation, Objectors object to the employment described in the

24  Amended Employment Notice on the grounds that the Law Firm is not disinterested

25  by reason of its employment by Bijan Chadorchi and the Chadorchi Family Trust

26  concurrently with its representation of the Trustee; and the Law Firm bears an

27  actual conflict of interest as a result of that concurrent representation.

28  / / /

h:\h\e\1457.083
8/23/01 (1:16 pm) jc

1      The Law Firm also bears a conflict of interest because its work to date

2  appears to have included faulty legal advice which has exposed the estate to liability.

3      Objectors request judicial notice of the record relative to the Law Firm's first

4  interim fee application and Objectors' objections thereto, in support hereof.

5

6  DATED: August 22, 2001        Respectfully submitted,

7                                      WEINSTEIN, EISEN & WEISS
                                       A Professional Corporation

8

9                               By:

10                                     DAVID R. WEINSTEIN
                                       Attorneys for Beverly Rodeo Development

11                                     Corp. and Fred Yassian

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

h:\h\c\1417.083
8/23/01 (1:16 pm) jc

DOCKET NO. 301

1  Charlie L. Hill, Esq., SBN 195456
   Kahlil J. McAlpin, Esq., SBN 199512
2  **PRYCE PARKER HILL, LLP**
   660 S. Figueroa Street, Suite 1450
3  Los Angeles, CA 90017
   Telephone:      (213) 622-8461
4  Facsimile:       (213) 622-8561

5  General Counsel for Robert D. Pryce,
   Chapter 7 Trustee

6

7       UNITED STATES BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA

8                          LOS ANGELES DIVISION

9

10 In re                              ) CASE NO: LA99-49349-VZ
                                      )
11 RODEO CANON DEVELOPMENT,           ) **Chapter 7**
   CORP.                              )
12                                    ) **NOTICE OF MOTION AND MOTION FOR**
                                      ) **ORDER APPROVING THE SETTLEMENT**
13                                    ) **AGREEMENT AND MUTUAL RELEASE**
                                      ) **BETWEEN THE CHAPTER 7 TRUSTEE, FRED**
14            Debtor.                 ) **YASSIAN AND BEVERLY RODEO**
                                      ) **DEVELOPMENT ("BEVERLY") AND REQUEST**
15                                    ) **FOR DISBURSEMENT OF ESTATE FUNDS;**
                                      ) **MEMORANDUM OF POINTS AND**
16                                    ) **AUTHORITIES; DECLARATION OF ROBERT D.**
                                      ) **PRYCE IN SUPPORT THEREOF**
17                                    )
                                      ) **F.R.B.P. 9019; LOCAL RULE 9019-1(2) AND**
18                                    ) **2002**
                                      )
19                                    ) **Date: January 30, 2002**
                                      ) **Time: 11:00 a.m.**
20                                    ) **Ctrm: 1368**
                                      )
21

22

23      **TO THE HONORABLE VINCENT P. ZURZOLO, UNITED STATES BANKRUPTCY**

24 **JUDGE, CREDITORS AND PARTIES IN INTEREST:**

25

26      PLEASE TAKE NOTICE that on January 30, 2002 at 11:00 a.m. at 255 East Temple, Los

27 Angeles, California 90012, in Courtroom 1368, or as soon thereafter as this matter may be

28 heard, the Chapter 7 Trustee ("Trustee") for the estate of Rodeo Canon Development

                                    -1-

1   against each other with. ... incurring further costs and expen    : associated with prosecuting

2   and defending the pending claims against each other.

3

4   **III. TERMS OF THE SETTLEMENT AGREEMENT**

5

6       The Trustee and Beverly have entered into a Deal Term Sheet which has settled all claims

7   Beverly and the Trustee may have against each other.  A true, accurate and complete copy of

8   the Deal Term Sheet is attached hereto as *Exhibit "A"* and is incorporated herein by this

9   reference.  The salient terms of the Deal Term Sheet provide that:

10          1.      Fred Yassian and Beverly Rodeo Development Corp (collectively referred to

11                  as "Beverly") agrees to the payment of the Professionals' Fees (interim

12                  administrative expenses) $455,400 through and including approval and

13                  implementation of this agreement, as follows:

14

15          2.      Approving the Chapter 7 Trustee's disbursement of Estate funds as follows

16                  Chapter 7 Trustee $322,600; Trustee's Counsel $85,500; Trustee's

17                  Accountant $45,000; Real Estate Broker's Attorneys Fees $2,300; Reserve

18                  for Future Professionals' Fees $40,000; Beverly Rodeo Development for the

19                  Fifth Deed of Trust $400,000 plus interest; and

20

21          3.      Future Professionals' Fees of Trustee and his professionals following

22                  approval of this Agreement will not exceed another $40,000 in the aggregate

23                  (beyond the $455,400 above).

24

25          4.      Beverly  withdraws all objections to continuing employment by Trustee of

26                  Pryce, Parker, Hill, LLP and all other professionals presently employed.

27                  Trustee's broker's and accountants' legal fees are approved and are included

28                  within paragraphs 1 and 2 above. With those limits, they can be employed

by the estate or not and paid their fees, as Trustee sees fit. Beverly waives its objection to the payment of these fees.

5.    Beverly, Yassian and their counsel shall immediately refrain from any formal or informal inquiries or other request to the Office of the United States Trustee, the Executive Office or any other entity regarding the Trustee and his law firm and to withdraw any such pending inquiries or requests, if any.

6.    Trustee agrees to withdraw his objection and release the full amount of Beverly's Fifth Trust Deed. Approximate amount to be released on the Fifth Deed of Trust is $400,000 plus interest, late charges, fees, etc. Calculation will be timely provided to Trustee. Trustee stipulates that Fifth Trust Deed was disputed up to point of this compromise and that this dispute included questions about its validity, plus issues involved in the adversary proceeding (*e.g.*, a disputed right of setoff). Trustee further stipulates that upon further investigation and in light of risks, etc. associated with litigation, this stipulation is warranted in order to compromise all claims and reduce the estate's litigation costs and expenses.

7.    Adversary Proceeding.

(a)    All claims for relief between Trustee and Beverly identified in the Trustee's complaint (as against Beverly) and Beverly's counter-claims (against the Trustee) will be dismissed with prejudice.

(b)    City National Bank account (approximately $8,000) will be deemed to be rents from the real property located at 9615 Brighton Way Beverly Hills, CA 90210 ("Brighton Way Property") which should be disbursed to the Trustee and added to the funds on hand (which are also proceeds of the Brighton Way Property). Beverly withdraws all objections it has or has made to the

- 6 -

1    disburs  .nent of these funds to the Trustee.

2    (c)    Trustee stipulates to declaratory relief, namely the existence of the 9615

3    Brighton Way Partnership ("Partnership"), with Beverly Rodeo as 50% partner

4    and Debtor Rodeo Development as a 50% partner. The Trustee further

5    stipulates to Beverly's 50% co-ownership interest in the Brighton Way

6    Property.

7    (d)    Trustee stipulates that Debtor's title and ownership of the Brighton Way

8    Property up to and at time of sale (April 2001) was legal title only, held at all

9    times for benefit of Debtor and Beverly equally.

10

11    8.    Trustee and Beverly agree that "two-level" reconciliation of funds that have

12    come into the estate (including funds still on hand) must be performed.  That

13    is: although the Brighton Way Property was co-owned by Debtor and Beverly

14    (per paragraph 7(c) and (d)), administrative expenses of estate, like certain

15    secured claims, will be deemed paid "off the top".   What is left is co-

16    ownership or partner money, to be divided between Debtor and Beverly.

17    (a)    From $2,800,000 (approximately) presently on hand, a total of approximately

18    $895,400, plus interest, late charges, fees, etc on the Fifth Trust Deed is to be paid

19    or reserved for hereunder.  This consists of:

20    1.    Professionals' Fees to date            $   455,400

21    2.    Future Professionals' Fees (Reserve)    $    40,000

22    3.    Beverly Fifth Trust Deed              $   400,000[1]

23    Total                                      $   895,400.

24    (b)    This leaves $1,904,600 (approximately; adjustments per footnote 1 yet to be

25    made), which is deemed to be partner property.

26    (c)    Trustee acknowledges that the following amounts, to be paid hereunder or

27

28    [1] $400,000 plus interest.  When the actual amount is known it will affect the totals.

-7-

already paid ، ⸝ the Estate from Brighton Way P ⸝erty proceeds, are deemed

chargeable to Rodeo Canon's ownership interest or share:

| | | | |
|---|---|---|---|
| (i) | Professionals' Fees (above) | $ | 455,400 |
| (ii) | Professionals' Fees Already Paid | $ | 169,300 (approx) |
| (iii) | Future Professionals' Fees (above) | $ | 40,000 |
| (iv) | Warnick Second Trust Deed | | $1,395,000 |
| (v) | Fifth Trust Deed | $ | 400,000 |
| (vi) | Warnick Sixth and Seventh Trust Deeds | $ | 1,893,081 |
| | Total | $ | 4,352,781 |

(d)    As a result of the amounts set forth in 8(c), an equal amount, namely

$4,352,781 (plus adjustments for interest and charges on the Fifth Trust Deed),

would have to be released to Beverly to bring the partners into balance (the

"Balancing Payment")[2].  However, after payment of Professionals' Fees and the

Fifth Trust Deed, and a reserve is created for Future Professionals' Fees, at most

$1,904,600 (approximate) will remain.  Since this is less than the amount needed

to balance the partners' "accounts", this will all be released to Beverly, leaving at

least approximately $2,448,181 due to it on the Balancing Payment.  As noted

above, the Trustee will retain a $40,000 reserve for Future Professionals' Fees

which is part of the $895,400- plus mentioned in paragraph 8(a) (the "Future

Professionals' Fees Reserve").  If all of that reserve is not used for Future

Professionals' Fees, it will be released to Beverly Rodeo on account of its Balancing

Payment.

(e)    If Warnicks are ordered to disgorge funds following appeal, that money will

also be deemed co-ownership property.    It will first go toward the Balancing

Payment.  The rest (if any) will be administered pursuant to orders or stipulations

---

[2] This amount may require adjustment based upon the Warnick Second Trust Deed and its use for the Brighton
Way Property.

that follow the appeal's conclusion.

9. Trustee will refrain from participating in the Beverly appeal so long as it does not violate the Trustee's statutory duties and obligations.

10. Beverly holds an allowed, unsecured claim of $1,000,000.

11. Beverly will be authorized, but not required, to bring claims objections concerning rent deposit claims and other miscellaneous unsecured claims (although Beverly does not seek exclusive authorization to do so). Trustee will not oppose any objections Beverly files to any unsecured claims. Trustee is authorized to pay all validly filed and un-objected unsecured claims in accordance with regular processes applicable thereto.

12. Trustee will not oppose any effort Beverly takes to subordinate or otherwise object to or attack the Perry-Warnick Unsecured Claim. Whether any such subordination proceeding is filed or not, the Perry-Warnick Unsecured Claim is deemed presently disputed by Beverly due to the appeal.

13. Trustee agrees that any estate funds allocated to Rodeo Canon that are or might be payable to Perry will be held pending separate resolution of disputes between Beverly Rodeo/Yassian and Rodeo Canon/Perry.

14. All parts of this Agreement are contingent upon all others being approved by the Bankruptcy Court, including approval of Professionals' Fees and the cap on Future Professionals' Fees. However, there is no contingency or condition that Future Professionals' Fees actually be approved by the Court or paid, only that the Future Professionals' Fees Reserve and cap for Future

DOCKET No. 302

FILED

ORIGINAL

1  DAVID R. WEINSTEIN (State Bar No. 082881)
   SHARON Z. WEISS (State Bar No. 169446)
2  ARAM ORDUBEGIAN (State Bar No. 185142)
   WEINSTEIN, EISEN & WEISS
3  A Professional Corporation
   1925 Century Park East, Suite 1150
4  Los Angeles, California 90067-2712
   Telephone (310) 203-9393
5  Facsimile (310) 203-8110

6  Attorneys for Beverly Rodeo Development
   Corporation and Fred Yassian

7

02 JAN 15 PM 12: 16

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

BY FY3CC DEPUTY

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10             LOS ANGELES DIVISION

11

12  In re                        )    Bk. No. LA 99-49349 VZ
                                  )    [Chapter 7]
13  RODEO CANON DEVELOPMENT       )
    CORPORATION,                  )    DECLARATION OF DAVID R.
14                                )    WEINSTEIN IN SUPPORT OF
          Debtor.                 )    TRUSTEE'S MOTION FOR
15                                )    AUTHORITY TO COMPROMISE WITH
                                  )    BEVERLY RODEO AND FRED
16                                )    YASSIAN
                                  )
17                                )    DATE:      January 30, 2002
                                  )    TIME:      11:00 a.m.
18                                )    PLACE:     Courtroom 1368
                                  )               255 E. Temple Street
19  _____)               Los Angeles, CA 90012

20       Beverly Rodeo Development Corporation and Fred Yassian submit the attached

21  Declaration of David R. Weinstein to support the Trustee's *Notice of Motion and*

22  *Motion for Order Approving the Settlement Agreement and Mutual Release Between*

23  *the Chapter 7 Trustee, Fred Yassian and Beverly Rodeo Development ("Beverly") and*

24  *Request for Disbursement of Estate Funds.* The Weinstein Declaration supports the

25  motion in that (1) it provides elaboration on the extended, arms'-length process that

26  led to the settlement, (2) attached to it are copies of the documents provided to the

27  / / /

28  / / /

h:\h\e\1417\1417.112.wpd
1/14/02 (2:01 pm) je

302 M

1   Trustee relative to the factual stipulations in the settlement, and (3) it demonstrates

2   that $762,441.23 is due and owing on the **Fifth Deed of Trust**, which amount is one of

3   the payments to be made upon approval of the settlement.

4

5   DATED: January 14, 2002                     Respectfully submitted,

6                                               WEINSTEIN, EISEN & WEISS
                                                A Professional Corporation

7

8                                               By
9                                                  DAVID R. WEINSTEIN
                                                Attorneys for Fred Yassian and
10                                              Beverly Rodeo Development Corporation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF DAVID R. WEINSTEIN

I, David R. Weinstein, declare:

1.    I am an attorney, duly admitted to practice before this United States Bankruptcy Court.  I am one of the principals of Weinstein, Eisen & Weiss, a Professional Corporation, counsel for Beverly Rodeo Development Corporation and Fred Yassian.  I have personal knowledge of the facts described hereinbelow and if called as a witness I could and would testify competently thereto.

2.    The settlement before the Court is the product of extended, good faith negotiations between our clients and the Trustee.  I personally participated in virtually all aspects of the settlement process which, at times, became contentious and polarized.  Counsel for the Trustee participated throughout as well, and the resulting settlement is clearly the result of the parties having blended together numerous concepts, demands and "deal points" at arms'-length.

3.    Although settlement has been discussed between our clients, the Trustee, the Warnicks and the Perrys intermittently since the outset of our firm's entry into the case in March 2001, and I know settlement negotiations pre-dated that point as well, the present settlement can be traced to the mediation ordered by this Court in September 2001.

4.    It took several weeks merely to agree on a mediator acceptable to all parties.  Eventually, the parties settled on the Honorable Kathleen T. Lax and after calendar conflicts were taken into account, the mediation was set to convene on November 14, 2001.

5.    With the mediation set, a couple of days before November 14, 2001, Louis Khoury, counsel for the Warnicks, informed the other parties he could not and would not attend due to a trial in another matter.  I and others attempted to prevail upon Mr. Khoury to make arrangements to attend and eventually he did, with his clients,

h:\h\c\1417\1417.112.wpd
1/14/02 (2:01 pm) jc

3

1    on the morning of November 14, 2001. However, he and the Warnicks withdrew for

2    the day, late in the morning or early that afternoon, to attend to the other matters.

3        6.    The Trustee, the Perrys and their respective counsel remained (with me and

4    our clients as well) and we continued throughout the day of November 14, 2001 until

5    past 5:00 p.m. At that point, the parties agreed to reconvene at 9:00 a.m. on

6    November 21, 2001, the day before Thanksgiving. On the second day, both the

7    Perrys and the Warnicks, and their counsel, requested that they be excused early, so

8    negotiations could proceed between the Trustee and our clients. Judge Lax, the

9    Trustee and our clients agreed. After their departure, the Trustee, our clients,

10    counsel and Judge Lax continued past 7:00 p.m.

11        7.    Following the November 21, 2001 negotiations, our clients and the Trustee,

12    principally through counsel, continued negotiations, including drafting a "term

13    sheet", outside the presence of a mediator. At least one face-to-face conference was

14    held and I estimate that the term sheet was revised at least ten times and that I

15    personally spent at least 20 hours on the settlement negotiations after November 21,

16    2001. It is clear to me that the settlement is carefully crafted and each component

17    depends heavily on the others.

18        8.    In the course of the post-November 21 proceedings, I delivered five

19    documents to the Trustee's counsel for the purpose of providing evidence that would

20    have been offered at a trial in the adversary proceeding that is one of the matters

21    compromised here (in part) and that, at a minimum, is relevant to and tends to prove

22    (a) the existence of the Golden Triangle Partnership, (b) Beverly Rodeo's position as a

23    50% partner and (c) the Partnership's and Beverly Rodeo's equitable interests in the

24    Golden Triangle Building and its proceeds. Those documents included the following,

25    which I pointed out to the Trustee's counsel did not comprise all the evidence that

26    would have been offered on the point. Copies of the documents I delivered to the

27    Trustee's counsel are attached hereto and marked as indicated. Bracketed references

28    to page or paragraph numbers in the subparagraphs immediately below are to

1  portions of the documents I highlighted for the Trustee's counsel. Many of these

2  documents were created by or on behalf of the debtor-in-possession and I pointed out

3  to the Trustee's counsel that we would argue, among other things, that these were

4  (are) admissions by the Trustee's immediate legal predecessor.

5        a.   <u>Exhibit "1"</u>:

6        First Amendment to the Standard Offer and Agreement for Purchase of

7  Real Estate. [Recital B.]

8        b.   <u>Exhibit "2"</u>:

9        Notice of Motion and Motion (1) Objecting to Claim of William and Ann

10  Warnick, or (2) in the Alternative, for Estimation of Claim for Voting and

11  Distribution Purposes; Memorandum of Points and Authorities; Declaration of David

12  Perry filed May 12, 2000. [Document pages 5:14-22, 16:19-28 (sworn declaration).]

13        c.   <u>Exhibit "3"</u>:

14        First Amended Disclosure Statement and First Amended Plan of

15  Reorganization filed June 14, 2000. [Document page 8:8-14; Document Exhibit A.]

16        d.   <u>Exhibit "4"</u>:

17        Notice of Joint Motion and Joint Motion of Debtor Rodeo Canon

18  Development Corporation and Beverly Rodeo Development Corporation for Order

19  Authorizing Sale of Real Property; Memorandum of Points and Authorities;

20  Supporting Declarations of David Perry and Farshid Yassian; and Exhibits in

21  Support Thereof. [Document pages 1:7-12 and footnotes 1 and 2; 6:5-15; 28:13-28

22  (sworn declaration).]

23        e.   <u>Exhibit "5"</u>:

24        Promissory Note Secured by Deed of Trust and related Deed of Trust

25  with Assignment of Rents. [Note, penultimate paragraph.]

26        9.   Pursuant to paragraph 5 of the Deal Term Sheet (which the Trustee

27  attached to the settlement motion), there is an agreement that the validity of

28  Beverly's Fifth Deed of Trust is valid for "$400,000 plus interest, late charges, fees,

1    etc. Calculation will be timely provided to Trustee". Our client has calculated the

2    sum due on the Fifth Deed of Trust that was removed to the proceeds of sale of the

3    Golden Triangle Building and which is one of the things to be paid as part of this

4    settlement. Attached as Exhibits "6" and "7" are copies of two "Straight Notes",

5    dated April 10, 1996 and April 16, 1996, that constitute the debt secured by the Fifth

6    Deed of Trust. The core debt is $440,000, consisting of (a) original principal of

7    $400,000; (b) "points" and up front charges of $20,000 and (c) pre-paid interest of

8    $20,000. No payments have ever been received on this debt.

9        10. Our client has added interest and attorneys' fees to the core debts, but not

10   late charges. The total due as of January 30, 2002 is $762,441.23. Interest accrues

11   at the rate of $197.38 per day after that. The sum due as of January 30, 2002

12   includes (a) interest at ten percent (10%) per annum for (i) the full five years from

13   October 1996 through September 2001 and (ii) the partial year from October 1, 2001

14   through January 30, 2002 plus (b) attorneys' fees of $30,000. The attorneys' fee

15   component is far less than our client has spent on legal fees concerning these issues

16   and is a conservative estimate of the amount easily attributable to the Fifth Deed of

17   Trust and disputes, litigation, etc. pertinent to it.

18       11. Attached hereto as Exhibit "8" is a copy of a Stipulated Judgment the parties

19   have signed to implement pertinent parts of the settlement that affect the adversary

20   proceeding before this Court to which our clients and the Trustee are parties (among

21   others), i.e., adversary proceeding no. LA 01-01014-VZ.

22       I declare under penalty of perjury under the laws of the United States of America

23   that the foregoing is true and correct.

24       Executed this 14 day of January, 2002 at Los Angeles, California.

25

26

27                         DAVID R. WEINSTEIN

28

1    On November 4, 1993, Beverly caused a written Memorandum of Agreement

2    ("Memorandum") (incorporating a copy of the Partnership Amendment) to be recorded

3    in the Los Angeles County Recorder's Office, placing all third parties on record notice of

4    David and Danny Perry's and Debtor's inability to unilaterally encumber the Property.

5    (See Perry Declaration, Ex. "5".)

6    **B.    History of Encumbrances on the Property.**

7    As of the date the Debtor filed its voluntary petition under chapter 11 of the

8    United States Code (the "Bankruptcy Code"), the following encumbrances existed on

9    the Property:

10    **1.    First Deed of Trust of Wells Fargo Bank, N.A. ("Wells").**

11    Debtor entered into an agreement with Wells dated September 11, 1990, wherein

12    Wells loaned Debtor $4,800,000, which loan was secured by a first priority deed of trust

13    ("First Deed of Trust") recorded by Wells on September 14, 1990.  An agreement

14    modifying the terms and provisions of the first priority deed of trust was recorded on

15    November 3, 1993.  As reflected in the document recorded on February 9, 1995, Wells

16    advanced an additional $190,000 to Debtor, which advance was secured by the First

17    Deed of Trust.  Attached as Exhibit "6" to the Perry Declaration is a true and correct

18    copy of Wells' recorded deed of trust.  In its schedules, Debtor listed Wells as having an

19    undisputed secured claim in the amount of $2,899,267.39.  Wells did not file a proof of

20    claim.[5]  Payments to Wells have remained current. (See Perry Declaration.)

21    **2.    Second Deed of Trust of Allan and Jill Warnick.**

22    In or about late October 1993, the Warnicks and Debtor's Chief Executive

23    Officer, David Perry ("Perry"), requested that Beverly consent to an encumbrance on the

24    Property as security for a $850,000 loan by Allan and Jill Warnick to the Debtor.  At that

25    time, Allan and Jill Warnick specifically stated to Mr. Yassian, as a representative of

26    Beverly, that the repayment of the loan, including all interest and costs, would be the

27

28    _____

[5] The bar date for filing proofs of claim was set for February 11, 2000 by Order entered
on December 10, 1999.

5442/P005/Mtn.2.Sell.3                    7                    NS

000276

1    sole responsibility of the Debtor and an encumbrance on the Property as security for the

2    loan would only cover Debtor's 50% partnership interest in the Property.  Based on

3    these representations, Beverly consented to an encumbrance on the Property as

4    security for Allan and Jill Warnick's $850,000 loan to the Debtor. (*See* Declaration of

5    Farshid Yassian ("Yassian Declaration") and Perry Declaration annexed hereto.)

6        On or about November 3, 1993, Allan and Jill Warnick recorded a deed of trust

7    on the Property as security for their $850,000 loan to the Debtor, which deed of trust is

8    second in priority ("Second Deed of Trust").  In violation of their promise to Beverly, the

9    Second Deed of Trust was placed on the entire Property, not just Debtor's 50%

10    partnership interest in such Property.  Attached as Exhibit "7" to the Perry Declaration is

11    a true and correct copy of Jill and Allen Warnick's recorded trust deed.

12        Subsequently, in or about November 1998; Allan and Jill Warnick and the Debtor

13    modified the terms of the loan so that the loan would be for a longer term and Allan and

14    Jill Warnick would be paid a higher annual interest rate, therefore resulting in a higher

15    lien amount on the Property.

16        Allan and Jill Warnick now allege that the repayment of the $850,000 loan is the

17    responsibility of Beverly and the Debtor.  As set forth below, litigation has been filed by

18    Beverly against Allan and Jill Warnick to resolve this and other issues.  Allan and Jill

19    Warnick's claim of $850,000 was scheduled by Debtor as contingent, unliquidated and

20    disputed. No proof of claim was filed.

21        3.    Third and Fourth Deeds of Trust of the Small Business

22            Administration.

23        In or about August 1994, the Debtor entered into two loans with the U.S. Small

24    Business Administration, an agency of the United States Government ("SBA"). In the

25    first loan, Debtor borrowed $242,000 and in the second loan Debtor borrowed

26    $153,400. These two loans were secured by liens on the Property recorded on

27    September 1, 1994, with Debtor and Beverly's consent. The liens are respectively third

28    ("Third Deed of Trust") and fourth ("Fourth Deed of Trust") in priority. On or about May

v00277

1    25, 1995, Debtor borrowed an additional $312,3000 from the SBA, which debt was

2    secured by the Third Deed of Trust already recorded on September 1, 1994.

3        The Debtor scheduled the SBA's claim as undisputed; however, the SBA filed

4    two proofs of claim in the Debtor's case totaling $554,154.13 (Third Deed of Trust

5    $463,883.45 and Fourth Deed of Trust $90,270.68). Attached as Exhibits "8", "9" and

6    "10" respectively to the Perry Declaration are true and correct copies of the SBA's

7    recorded trust deed and the proofs of claim it filed. Payment to the SBA has remained

8    current. (See Perry Declaration.)

9        4.    Fifth Deed of Trust of Beverly.

10        On or about April 10, 1996, Beverly loaned Debtor $400,000, which debt is

11    secured by a fifth deed of trust ("Fifth Deed of Trust") on the Property recorded on April

12.    16, 1996. The promissory note executed by Debtor provides, among other things, that

13    Beverly shall receive 10% interest per annum commencing on April 17, 1996 until the

14    debt is paid and $20,000 shall be paid upon maturity as point fees on April 17, 1997.

15    The Debtor listed Beverly's claim on its schedules as $400,000. Beverly did not file a

16    proof of claim. Attached as Exhibit "11" to the Perry Declaration is a true and correct

17    copy Beverly's recorded trust deed.

18        5.    Sixth and Seventh Deeds of Trust of the Warnick Trust.

19        In or about September 1996, Danny and David Perry entered into an agreement

20    with William and Ann Warnick as trustees of the William and Allan Warnick Family

21    Living Trust ("Warnick Trust"), whereby they agreed to allow the Warnick Trust to place

22    a lien on the Property as collateral for a $950,000 loan that the Warnick Trust had

23    allegedly previously made to another entity owned by the Perrys. This alleged

24    $950,000 loan had already been secured by other assets owned by the Perrys;

25    however, the Warnick Trust requested additional collateral. On or about October 7,

26    1996, despite knowing that all encumbrances on the Property had to be consented to in

27    writing by both the Debtor and Beverly, the Warnick Trust recorded a sixth deed of trust

28    on the Property as security for the alleged $950,000 loan ("Sixth Deed of Trust").

5442/P005/Mtn.2.Sell.3                    9

○00278

1  Beverly not only did not provide its consent, it was unaware of this transaction until

2  much later. The Memorandum, which explicitly cites this requirement, was recorded in

3  the Los Angeles County Recorder's Office in 1993 to let third parties, like the Warnick

4  Trust, know that the Debtor could not encumber the Property unilaterally.

5        In or about August 1998, David and Danny Perry entered into another agreement

6  with the Warnick Trust whereby they agreed to allow the Warnick Trust to place a lien

7  on the Property as collateral for a $1,500,000 loan that the Warnick Trust had allegedly

8  previously made to the Perrys. This alleged $1,500,000 loan had already been secured

9  by other assets owned by the Perrys; however, the Warnick Trust requested additional

10  collateral. On or about October 27, 1998, the Warnick Trust again, without Beverly's

11  knowledge and consent and in violation of the Memorandum, placed a seventh deed of

12  trust ("Seventh Deed of Trust") on the Property as security for the alleged $1,500,000

13  loan to the Perrys' other entities. The Note underlying the $1.5 loan provides on its face,

14  "This note is secured by Rodeo Canon Developments' 50% share in the Building only."

15  A true and correct copy of the Note is attached to the Perry Declaration as Exhibit "12".

16        The Debtor listed Beverly's claim on its schedules as contingent, unliquidated

17  and disputed. The Warnick Trust filed a proof of claim for $2,550,000 plus interest for

18  its Sixth Deed of Trust and Seventh Deed of Trust. Attached as Exhibits "13", "14", and

19  "15" respectively to the Perry Declaration are true and correct copies of the recorded

20  Sixth and Seventh Trust Deeds and the proof of claim filed by the Warnick Trust.

21        C.    Complaints Filed by Debtor and Beverly Against the Warnicks and

22              Warnick Trust.

23        On March 6, 2000, Mr. Perry, the Debtor and another entity filed an action in the

24  Los Angeles Superior Court, Case No. BC 225959, against the Warnicks for declaratory

25  relief, damages for breach of written contract and fraud. A true and correct copy of the

26  Debtor's Complaint is attached as Exhibit "16" to the Perry Declaration.

27        On July 17, 2000 Beverly and BWP filed a complaint in the Los Angeles Superior

28  Court, Case No. BC 233457, against Allan and Jill Warnick, William and Ann Warnick,

5442/P005/Mtn.2.Sell.3                          10

118
000279

THE RODEO CANON DEVELOPMENT CORPORATION
9615 BRIGHTON WAY
SUITE 314
BEVERLY HILLS, CALIFORNIA 90210

March 1, 1991

Beverly Rodeo Development Corporation
9615 Brighton Way
Suite 314
Beverly Hills, CA 90210

Dear Sirs:

This letter will confirm that The Rodeo Canon Development Corporation has purchased the building located at 9615 Brighton Way from Mel Brooks and that it has taken 100% of the fee title in its name.

This letter will further confirm that although The Rodeo Canon Development Corporation is the record owner of 100% of the real property, in fact, it is only the equitable owner of 50% of the property, and that it holds the remaining 50% as undisclosed Trustee for the benefit of Beverly Rodeo Development Corporation.

This writing will further confirm that The Rodeo Canon Development Corporation will convey the undivided 50% to the real property which it holds in trust to the Beverly Rodeo Development Corporation or order at any time upon the written demand of Beverly Rodeo Development Corporation. A deed of trust has been executed by The Rodeo Canon Development Corporation in favor of Beverly Rodeo Development Corporation to insure the faithful performance of this agreement.

Very truly yours,


THE RODEO CANON DEVELOPMENT CORPORATION

By: _____

DAVID PERRY

By: _____

DANNY PERRY

LR1451

EXHIBIT    3                    00319
                           49
                              158

DOCKET # 324

1  Charlie L. Hill, Esq., SBN 195456
   Kahlil J. McAlpin, Esq., SBN 199512
2  **PRYCE PARKER HILL, LLP**
   660 S. Figueroa Street, Suite 1450
3  Los Angeles, CA 90017
   Telephone:   (213) 622-8461
4  Facsimile:   (213) 622-8561

5  General Counsel for Robert D. Pryce,
   Chapter 7 Trustee

6

7

8          UNITED STATES BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA

9                          LOS ANGELES DIVISION

10

11
   In re                              )   CASE NO: LA99-49349-VZ
12                                     )
   RODEO CANON DEVELOPMENT,            )   **Chapter 7**
13 CORP.                               )
                                       )   **NOTICE OF MOTION AND MOTION
14                                     )   FOR ORDER APPROVING THE
                                       )   SETTLEMENT DEAL TERM SHEET
15                                     )   BETWEEN THE CHAPTER 7 TRUSTEE,
                                       )   FRED YASSIAN AND BEVERLY RODEO
16              Debtor.                )   DEVELOPMENT ("BEVERLY")AND
                                       )   REQUEST FOR DISBURSEMENT OF
17                                     )   ESTATE FUNDS; MEMORANDUM OF
                                       )   POINTS AND AUTHORITIES;
18                                     )   DECLARATION OF ROBERT D. PRYCE IN
                                       )   SUPPORT THEREOF
19                                     )
                                       )   F.R.B.P. 9019; LOCAL RULE 9019-1(2)
20                                     )   AND 2002
                                       )
21                                     )   Date:    May 29, 2002
                                       )   Time:    11:00 a.m.
22 _____    )   Ctrm:    1368**

23

24     **TO THE HONORABLE VINCENT P. ZURZOLO, UNITED STATES BANKRUPTCY**

25 **JUDGE, CREDITORS AND PARTIES IN INTEREST:**

26

27     PLEASE TAKE NOTICE that on May 29, 2002, at 255 East Temple, Los Angeles,

28 California 90012, in Courtroom 1368, or as soon thereafter as this matter may be heard,

                                    - 1 -

4.   Trustee agrees to withdraw his objection and release the full amount of Beverly's Fifth Trust Deed. Approximate amount to be released on the Fifth Deed of Trust is $780,000. Trustee stipulates that Fifth Trust Deed was disputed up to point of this compromise and that this dispute included questions about its validity, plus issues involved in the adversary proceeding (*e.g.*, a disputed right of setoff). Trustee further stipulates that upon further investigation and in light of risks, etc. associated with litigation, this stipulation is warranted in order to compromise all claims and reduce the estate's litigation costs and expenses.

5.   Adversary Proceeding.

(a)   All claims for relief between Trustee and Beverly identified in the Trustee's complaint in adversary proceeding LA01-01410-VZ (as against Beverly) and Beverly's counter-claims (against the Trustee) will be dismissed with prejudice.

(b)   Beverly stipulates to declaratory relief, namely that the $334,000 distributed to Beverly during the pendency of the Chapter 11 case were rents from the real property located at 9615 Brighton Way, Beverly Hills, California 90210 ("Brighton Way Property") which would have been funds on hand when the Trustee was appointed had they not been released to Beverly without a court order. As such, Beverly will not dispute that the Trustee is entitled to calculate the $334,000 as if it were actually received by the estate and distributed to Beverly as its co-ownership's interest.

(c)   Beverly agrees that the City National Bank account (approximately $8,000) will be deemed to be rents from the real property located at 9615 Brighton Way Beverly Hills, CA 90210 ("Brighton Way Property") which should be disbursed to the Trustee and added to the funds on

- 6 -

| | | | | | |
|---|---|---|---|---|---|
| 1 | Rodeo Balance | <$ 91,564> | | Beverly Balance | $3,195,550 |
| 2 | Tenant Vendor | <$ 36,000> | | | <$36,000> |
| 3 | Prof. Fees | <$ 290,200> | | | <$290,200> |
| 4 | **BALANCE** | <$ 417,764> | | | $3,159,550 |

8.    The Trustee will also pay $780,000 to Beverly as full satisfaction of its Fifth Deed of Trust. This was the sole debt of Rodeo.

| | | | | |
|---|---|---|---|---|
| Rodeo's Balance(above) | <$ 417,764> | Beverly's Balance(above) | $2,869,350 |
| Beverly 5th | <$ 780,000> | | |
| **BALANCE** | <$1,197,764> | | $2,869,350 |

9.    The Trustee will reserve $350,000 to pay the Perry-Warnick Unsecured Claim pending resolution of (a) any objections raised by Beverly and (b) the Appeal.

| | | | | |
|---|---|---|---|---|
| Rodeo's Balance | <$1,197,764> | Beverly's Balance | $2,869,350 |
| Perry/Warnick Unsecured | <$ 350,000> | | |
| **BALANCE** | <$1,547,764> | | $2,869,350 |

10.    After the Trustee makes the payments and reservations described in paragraphs 7, 8, and 9, there will be approximately $1,025,600 on hand.

$2,808,000 — Cash on hand
<$ 72,000>
<$ 780,000>
<$ 350,000>
<$ 580,400>

| | |
|---|---|
| 1 | Subtotal        <$1,782,400> |
| 2 | **Balance on hand**      $1,025,600 |

3

4    11.    The Trustee will cause the $1,025,600 to be disbursed to Beverly pursuant

5          to a Court order.

6

7    12.    As such, Beverly will be paid $1,025,600 towards the outstanding  balance

8          of its co-ownership interest of $2,869,350, leaving a total remaining balance

9          of $1,847,950, plus Rodeo's overpayment of $1,547,764 as set forth in

10         paragraph 9.

11

12    13.    To the extent that the Warnicks are ordered to return any proceeds

13         previously paid to them by the estate, then these proceeds will be used to

14         balance the co-owners' interest hereof and the balance, if any, is to be

15         equally divided between Rodeo and Beverly.

16

17    14.    The Trustee hereby stipulates and agrees to Beverly's allowed and

18         unsecured claim in the amount of $3,391,514 which represents the

19         $1,843,950 unpaid balance plus $1,547,764 overdraft by Rodeo. This claim

20         will be reduced in the event that proceeds are returned  to the estate from

21         the Warnicks as set forth in paragraph 13 above.

22

23    15.    Beverly will be authorized, but not required, to bring claims objections

24         concerning rent deposit claims and other miscellaneous unsecured claims

25         (although Beverly does not seek _exclusive_ authorization to do so).   Trustee

26         will not oppose any objections Beverly files to any unsecured claims. Trustee

27         is authorized to pay all validly filed and un-objected unsecured claims in

28         accordance with regular processes applicable thereto.

DOCKET #327

FILED

1 | DAVID R. WEINSTEIN (State Bar No. 082881)
2 | SHARON Z. WEISS (State Bar No. 169446)
ARAM ORDUBEGIAN (State Bar No. 185142)
3 | WEINSTEIN, EISEN, WEISS & ROTHSCHILD LLP
1925 Century Park East, Suite 1150
Los Angeles, California 90067-2712
4 | Telephone (310) 203-9393
Facsimile (310) 203-8110
5 |
Attorneys for Beverly Rodeo Development
6 | Corporation and Fred Yassian

'02 MAY 20 PM 4: 13

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

BY _____ DEPUTY

7 |

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re | Bk. No. LA 99-49349 VZ |
| | [Chapter 7] |
| RODEO CANON DEVELOPMENT CORPORATION, | DECLARATION OF DAVID R. WEINSTEIN IN SUPPORT OF TRUSTEE'S MOTION FOR ORDER |
| Debtor. | APPROVING THE SETTLEMENT DEAL TERM SHEET BETWEEN CHAPTER 7 TRUSTEE, FRED YASSIAN AND BEVERLY RODEO DEVELOPMENT CORPORATION; REQUEST FOR JUDICIAL NOTICE |
| | DATE:      June 12, 2002 |
| | TIME:      11:00 a.m. |
| | PLACE:    Courtroom 1368 |
| |              255 E. Temple Street |
| |              Los Angeles, CA 90012 |

Beverly Rodeo Development Corporation and Fred Yassian submit the attached

Declaration of David R. Weinstein to support the Trustee's *Notice of Motion and*

*Motion for Order Approving the Settlement Deal Term Sheet Between the Chapter 7*

*Trustee, Fred Yassian and Beverly Rodeo Development Corporation ("Beverly") and*

*Request for Disbursement of Estate Funds.* The Weinstein Declaration supports the

motion in that (1) it requests judicial notice of a prior declaration by the same

declarant that (a) provided elaboration on the extended, arms'-length process that led

to a prior version of the settlement and (b) provided the Court copies of documents

N1417\1417.176.wpd
2 (12:40 pm) jc

1  provided to the Trustee relative to the factual stipulations in the settlement; (2) it

2  provides detail on continuing arms-length negotiations that led to the current

3  compromise; and (3) it demonstrates that $788,495.39 will be due and owing on the

4  Fifth Deed of Trust as of June 12, 2002, which amount is one of the payments to be

5  made upon approval of the settlement (subject to per diem accruals thereafter until

6  paid).

7

8  DATED: May 20, 2002                    Respectfully submitted,

9                                         WEINSTEIN, EISEN, WEISS
                                          & ROTHSCHILD LLP
10

11

12  By _____
                                          DAVID R. WEINSTEIN
13                                        Attorneys for Fred Yassian and
                                          Beverly Rodeo Development Corporation

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF DAVID R. WEINSTEIN

I, David R. Weinstein, declare:

1.    I am an attorney, duly admitted to practice before this United States Bankruptcy Court. I am one of the principals of Weinstein, Eisen, Weiss & Rothschild LLP, counsel for Beverly Rodeo Development Corporation and Fred Yassian. I have personal knowledge of the facts described hereinbelow and if called as a witness I could and would testify competently thereto.

2.    On January 15, 2002, I filed a *Declaration of David R. Weinstein in Support of Trustee's Motion for Authority to Compromise with Beverly Rodeo and Fred Yassian* to support and provide factual underpinnings for a motion filed by Robert D. Pryce, Trustee (the "Trustee") for authority to compromise with our clients (the "First Weinstein Declaration"). The First Weinstein Declaration was part of the record at the hearing on January 30, 2002 at which the Court considered the Trustee's prior motion for authority to compromise with Yassian and Beverly.

3.    That motion was denied when the Trustee declined to make certain changes the Court indicated would be necessary pre-requisites to approval. Nevertheless, the First Weinstein Declaration is part of this Court's record and provides facts material to the instant motion. Hence, on behalf of our clients, I request judicial notice of the First Weinstein Declaration.

4.    After January 30, 2002, negotiations continued (or were renewed) over a compromise between the Trustee and our clients that would be similar to the prior one but changed sufficiently to satisfy the Court's requirements. Over a period beginning in early February 2002 and extending into at least late April 2002, on behalf of our clients, but in conjunction with them, I conducted on-going negotiations with the Trustee and his counsel, Mr. Charlie Hill.

5.    Those negotiations involved a least a dozen telephone calls; at least one face-to-face conference with all those persons and a confidant of Mr. Yassian present; other

1  meetings between some of those persons; and the exchange of nearly a dozen revised

2  versions of a Term Sheet.

3      6.    Those efforts led to the Term Sheet now before the Court. Related events that

4  predated the January 30, 2002 hearing are recounted in the First Weinstein

5  Declaration. A copy of that declaration, without its exhibits, is attached hereto as

6  Exhibit"A" and incorporated herein by this reference. I have deleted the exhibits to

7  Exhibit "A" due to their significant bulk, but include them in the request for judicial

8  notice.

9      7.    The settlement before the Court is thus the product of extended, good faith

10  negotiations between our clients and the Trustee. I personally participated in

11  virtually all aspects of the settlement process which, at times, became contentious and

12  polarized. Counsel for the Trustee participated throughout as well, and the resulting

13  settlement is clearly the result of the parties having blended together numerous

14  concepts, demands and "deal points" at arms'-length.

15      8.    Pursuant to paragraph 4 of the Deal Term Sheet now before the Court (which

16  the Trustee attached to the now pending settlement motion), there is an agreement

17  that the "[a]pproximately $780,000 will be released on the Fifth Deed of Trust

18  ($400,000 plus interest, late charges, fees, etc.)". Attached to the First Weinstein

19  Declaration as Exhibits "6" and "7" were copies of two "Straight Notes", dated April 10,

20  1996 and April 16, 1996, that constitute the debt secured by the Fifth Deed of Trust.

21  Those notes are also attached to the Trustee's Motion. The core debt is $440,000,

22  consisting of (a) original principal of $400,000; (b) "points" and up front charges of

23  $20,000 and (c) pre-paid interest of $20,000. No payments have ever been received on

24  this debt.

25      9.    Our client has calculated the sum due on the Fifth Deed of Trust that was

26  removed to the proceeds of sale of the Golden Triangle Building and which is one of

27  the things to be paid as part of this settlement. Our client has added interest and

28  attorneys' fees to the core debts, but not late charges. The total due as of January 30,

1  2002 was $762,441.23 as was reported in the First Weinstein Declaration.  Interest

2  accrues at the rate of $197.38 per day after that.  The sum due as of January 30, 2002

3  included: (a) interest at ten percent (10%) per annum for (i) the full five years from

4  October 1996 through September 2001 and (ii) the partial year from October 1, 2001

5  through January 30, 2002 plus (b) attorneys' fees of $30,000.  The attorneys' fee

6  component is far less than our client has spent on legal fees concerning these issues

7  and is a conservative estimate of the amount easily attributable to the Fifth Deed of

8  Trust and disputes, litigation, etc. pertinent to it.  This is particularly true  in light of

9  the extended legal work that arose after January 30, 2002.

10  10.  There are 132 days between February 1, 2002 and the current hearing date

11  of June 12, 2002 (inclusive).  By multiplying the per diem accrual ($197.38, above) by

12  that number of days, I have determined that $26,054.16 will have accrued after

13  January 30, 2002 and as of the hearing date of June 12, 2002, bringing the amount

14  due on the Fifth Deed of Trust as of June 12, 2002 to $788,495.39. As noted above,

15  $197.38 accrues each day thereafter until the Fifth Trust Deed is paid.

16  I declare under penalty of perjury under the laws of the United States of America

17  that the foregoing is true and correct.

18  Executed this 20 day of May, 2002 at Los Angeles, California.

19

20  _____
                          DAVID R. WEINSTEIN

21

22

23

24

25

26

27

28

DOCKET # 329

1  LOUIS J. KHOURY, ESQ., SBN 57491
   LAW OFFICES OF LOUIS J. KHOURY
2  A Professional Corporation
   1801 Century Park East, Suite 2400
3  Los Angeles, CA 90067-2326

4  Telephone:  (310) 553-7291
   Facsimile:   (310) 553-7295

5  Attorney for Creditors WILLIAM and ANN WARNICK,
   ALAN WARNICK and JILL WARNICK
6



7              UNITED STATES BANKRUPTCY COURT

8              CENTRAL DISTRICT OF CALIFORNIA

9

10  In RE                          )   CASE NO.   LA-99 49349 VZ
                                   )
11  RODEO CANON DEVELOPMENT        )   Chapter 11
    CORPORATION,                   )
12                                 )   OPPOSITION OF CREDITORS
        Debtor.                    )   WILLIAM AND ANN WARNICK,
13                                 )   INDIVIDUALLY AND AS TRUSTEES
                                   )   OF THE WILLIAM AND ANN
14                                 )   WARNICK FAMILY LIVING TRUST;
                                   )   JILL WARNICK AND ALLAN
15                                 )   WARNICK TO THE MOTION OF THE
                                   )   CHAPTER 7 TRUSTEE FOR AN
16                                 )   ORDER APPROVING THE
                                   )   SETTLEMENT DEAL TERM SHEET
17                                 )   BETWEEN THE CHAPTER 7
                                   )   TRUSTEE, FRED YASSIAN AND
18                                 )   BEVERLY RODEO DEVELOPMENT
                                   )   AND REQUESTING THE
19                                 )   DISBURSEMENT OF ESTATE
                                   )   FUNDS; DECLARATION OF LOUIS
                                   )   J. KHOURY
20                                 )
                                   )   DATE:      June 12, 2002
21                                 )   TIME:      11:00 a.m.
                                   )   Courtroom: 1368
22                                 )              255 E. Temple Street
                                   )              Los Angeles, CA 90012
23  _____)

24

25      William and Ann Warnick, individually and as Trustees of the William and Ann

26  Warnick Family Living Trust, Jill Warnick and Allan Warnick (herein collectively referred

27  to as "Warnick") submit the following Opposition to the Motion of the Chapter 7 Trustee

28

Louis J. Khoury
1801 Century Park East
Suite 2400
Los Angeles, CA 90067
(310) 553-7291

Opposition-05-28-02                         -1-
         OPPOSITION OF CREDITORS TO TRUSTEE'S MOTION FOR ORDER APPROVING SETTLEMENT

1    for an Order Approving the Deal Term Sheet between the Chapter 7 Trustee on the one

2    hand and Fred Yassian and Beverly Rodeo Development, on the other hand

3    (collectively referred to herein as "Yassian") and Requesting the Disbursement of

4    Estate Funds (herein the "Motion"):

5

6    I.      INTRODUCTION

7           A.      The Prior Motion to Approve a Settlement Between the Trustee and

8                   Yassian

9           This is the second motion to approve a settlement between Yassian and the

10   Trustee and it requests the Court approve a settlement that is substantially similar, in

11   the material respects significant herein, to the settlement agreement that this Court

12   refused to approve on January 30, 2002. A copy of a Deal Term Sheet was attached to

13   the documents that were filed by Counsel for the Trustee at the Status Conference and

14   Pre-Trial Conferences heard on April 25, 2002 and was discussed at the hearing. At

15   that hearing the Court stated:

16          "The thing I remember being significantly concerned with was that Mr. Pryce

17   stood at the lectern and told me that the compromise of controversy, a key to it, a

18   fundamental key to it was the fact that his fees be allowed, and his firms fees be

19   allowed without – essentially without review." (Transcript of the April 25, 2002 hearing

20   14: 7 - 11)

21          "I will never approve a compromise of controversy in this case where there is any

22   restriction or condition on allowance of compensation to the trustee or any professional,

23   period." (Transcript 16: 8 - 11)

24          ". . . [m]y concern is, a trustee, a fiduciary of a bankruptcy estate, settling with a

25   creditor and saying, allowance of my fees is a prerequisite to going forward with the

26   compromise of controversy with that creditor who has already raised an objection. That

27   – and I'm sorry I wish this in a more gentle way, that's stinks to high heaven, and I will

28   not approve that. And if I did not make that plain to Mr. Pryce the first time, you can

Louis J. Khoury
1801 Century Park East
Suite 2400
Los Angeles, CA 90067
(310) 553-7291

Opposition-05-28-02                                    -2-
           OPPOSITION OF CREDITORS TO TRUSTEE'S MOTION FOR ORDER APPROVING SETTLEMENT

1   make it plain to him right now." (Transcript 18: 17 - 24).  The Court only agreed to set a

2   hearing on the approval of the Deal Term Sheet when Mr. Hill came back after a short

3   break and informed the Court that the "trustee will support the motion for settlement and

4   compromise and that it is not contingent upon approval of the fees." (Transcript 19: 11 -

5   13).  Unfortunately, that is not what the Deal Term Sheet says.

6       **B.    The Deal Term Sheet**

7       The Deal Term Sheet attempts to do the same thing the first proposed

8   settlement agreement did and suffers from the same infirmities.  Paragraphs 1 and 2

9   provide that Yassian will not oppose the Trustee's and his attorney's fee applications as

10  described therein.  Paragraph 4 says the Trustee withdraws his objection to the

11  payment of the amount secured by Yassian's Fifth Trust Deed (approximately

12  $780,000).  Paragraph 5(a) provides for the dismissal of the claims for relief between

13  the Trustee and Yassian in the Adversary Proceeding and the succeeding sub-

14  paragraphs contain stipulations to facts, some of which contradict the factual positions

15  taken by the Trustee in his motion to approve the sale of the Brighton Way property and

16  which, if stipulated to before the sale motion, would have been inconsistent with the

17  grant of such motion and the sale of the Brighton Way property pursuant to this Court's

18  order.  Paragraph 6 purports to be an accounting of partnership funds from the point of

19  sale forward (although it is based upon factual assumptions that the Trustee can have

20  no basis to believe are true) showing the "balance of its [Beverly's] co-ownership

21  interest of $2,869,350, leaving a total remaining balance of $1,847,950, plus Rodeo's

22  overpayment of $1,547,764 . . . ." (Page 7, ¶ 12 of the Deal Term Sheet).  Finally,

23  Paragraph 17 of the Deal Term Sheet provides:  "All parts of this Agreement are

24  contingent upon all others being approved by the Bankruptcy Court."

25      The Deal Term Sheet both does what this Court said it would not countenance

26  and what Mr. Hill said Mr. Pryce would not do, to wit, tie an award of fees to the

27

28

Louis J. Khoury
1801 Century Park East
Suite 2400
Los Angeles, CA 90067
(310) 553-7291

Opposition-05-28-02                    -3-
OPPOSITION OF CREDITORS TO TRUSTEE'S MOTION FOR ORDER APPROVING SETTLEMENT

DOCKET # 333

1 | JOHN D. WILSON, ESQ., CSB NO. 94624
2 | SCHWARTZ, WISOT & WILSON, LLP
315 South Beverly Drive, Suite 315
3 | Beverly Hills, California 90212
Phone No.  (310) 277-2323
4 | Fax No.  (310) 556-2308

**ORIGINAL**

5 | Attorneys for Cross-Defendants
6 | DAVID PERRY and DANNY PERRY

7

8 | UNITED STATES BANKRUPTCY COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | LOS ANGELES DIVISION

11

12 | IN  RE                              ) Bk. NO.  LA99-49349-VZ
                                       ) [Chapter 7]
13 | RODEO  CANON DEVELOPMENT,           )
      CORP.,                            )
14 |                                    )
                     Debtor,            ) DAVID PERRY AND DANNY
15 | _____) PERRY'S REQUEST FOR JUDICIAL
                                        ) NOTICE FILED IN OPPOSITION TO
16 | ROBERT D. PRYCE, Chapter 7         ) MOTION FOR ORDER APPROVING
      Trustee,                          ) SETTLEMENT DEAL TERM SHEET
17 |                                    ) AMONGST THE CHAPTER 7
                     Plaintiff,         ) TRUSTEE, FRED YASSIAN, AND
18 |                                    ) BEVERLY RODEO DEVELOPMENT
            v.                          ) CORP.
19 |                                    )
      FRED YASSIAN dba BEVERLY          ) DATE: June 12, 2002
20 | RODEO DEVELOPMENT CORP.;           )
      BEVERLY RODEO DEVELOPMENT         ) TIME:  11:00 a.m
21 | CORP., an entity; CITY NATIONAL    )
      BANK; and DAVID PERRY and         ) COURTROOM:   1368
22 | DANNY PERRY dba REEFSHARE          )
      LTD and REEFSHARE, LTD.,          )
23 | an entity,                         )
                                       )
24 |                     Defendants.    )
                                       )
25 | _____)
      AND RELATED CROSS-COMPLAINT       )
26 | AND COUNTER-COMPLAINT              )
                                       )
27 | _____)

28 | ///

Pursuant to Federal Rule of Evidence 201, this court is requested to take judicial notice of the following:

1.  Cross-complaint of Beverly Rodeo Development Corporation and Fred Yassian, filed on April 18, 2002 and attached hereto as Exhibit "A."

2.  Notice of Motion and Motion to Consolidate Actions (without exhibits) filed on or about May 20, 2002, in the Superior Court of the State of California for the County of Los Angeles, and attached hereto as Exhibit "B".


DATED:    May 22, 2002                Respectfully submitted,

SCHWARTZ, WISOT & WILSON, LLP


By:
        JOHN D. WILSON
Attorneys for Cross-defendants
DAVID PERRY and  DANNY PERRY

1  REEFSHARE, LTD, a Hawaiian
   Corporation,

2                                          )
3          Cross-Complainants,             )
                                           )
4          v.                              )
                                           )
   DAVID PERRY, an individual,             )
5  DANNY PERRY, an individual,             )
   FARSHID YASSIAN, an individual,         )
6  BEVERLY RODEO                           )
   DEVELOPMENT, a California               )
7  corporation, and DOES 51 through        )
   100, inclusive,                         )
8                                          )
           Cross-Defendants.               )
9  _____        )

10 BEVERLY RODEO                           )
   DEVELOPMENT, a California               )   Case No. BC 263670
11 corporation and 9615 BRIGHTON           )
   WAY PARTNERSHIP, a General              )   ASSIGNED FOR ALL PURPOSES TO
12 Partnership dba GOLDEN                   )   JUDGE MAYEDA
   TRIANGLE BUILDING                        )
13 PARTNERSHIP,                            )   DEPARTMENT 72
                                           )
14         Plaintiffs,                     )   Motion Cut-Off:     none set
           v.                              )   Discovery Cut-Off:  none set
15                                         )   Trial:              none set
   ALAN WARNICK, an individual;            )
16 JILL WARNICK, an individual;            )
   WILLIAM WARNICK and ANN                 )
17 WARNICK, Trustees of the William        )
   and Ann Warnick Family Living           )
18 Trust; and DOES 1-100, inclusive,       )
                                           )
19         Defendants.                     )
   _____        )

20

21 TO:    THE HONORABLE JOHN MAYEDA, ALL PARTIES, AND THEIR

22        ATTORNEYS OF RECORD:

23        NOTICE IS HEREBY GIVEN that on June 27, 2002, at 9:00 a.m., or as soon

24 thereafter as the matter may be heard, in Department 72 of this Court, located at 111

25 North Hill Street, Los Angeles, California 90012, Defendants, Cross-Defendants and

26 Plaintiffs Farshid Yassian and Beverly Rodeo Development Corporation (hereinafter

27 collectively "Beverly Rodeo") will and do move under Rule 1048(a) of the Code of Civil

28 Procedure for an order consolidating case number BC 240158 with case number BC

417\1417.173.wpd
:55 pm) pr

1  disputed secured claims and they would additionally be allowed an unsecured claim in

2  the amount of $350,000.  After a complicated and lengthy hearing, both motions were

3  granted.

4         Eventually, the Bankruptcy Trustee's sale of the Property closed on

5  April 25, 2001 and the Warnick Creditors were paid $3,200,000 (plus interest) by the

6  Bankruptcy Trustee, as agreed.  They also, it turns out, sold their unsecured claim to

7  the Perrys for an additional $425,000 cash.[7]

8         Beverly Rodeo filed in the Bankruptcy Court a motion for

9  reconsideration of the Warnick Compromise, since there is also pending in the

10  Bankruptcy Court a lawsuit (an "adversary proceeding", in the parlance of Bankruptcy

11  Court litigation) in which one of the issues is whether, in fact, the Partnership or Rodeo

12  Canon truly was the rightful owner of the Property.  That lawsuit (the "Adversary

13  Proceeding") also encompasses many other issues.[8]  The motion for reconsideration

14  was denied in August 2001 and the Warnick Compromise is now on appeal before the

15  Bankruptcy Appellate Panel (the "BAP").  The BAP considered oral arguments on

16  March 20, 2002 and the parties are awaiting a ruling on the appeal.

17         Both Beverly Rodeo and the Warnick Creditors are parties to that

18  appeal and to the Adversary Proceeding, in which numerous counter-claims and cross-

19  claims have now been filed.  Among the claims asserted by the Warnick Creditors are

20  exactly the same contract claims that form the basis for both of the state court

21

22

23  [7]    This was not disclosed to the Bankruptcy Court and the effect of
this "sale" is one of numerous continuing issues still pending there.

24

25  [8]    Despite this dispute, bankruptcy law provides that Rodeo Canon's
Bankruptcy Trustee could sell the Property.  Thus, the still

26  pending Adversary Proceeding really addresses the right to the
proceeds of sale.  Among other things, Beverly Rodeo contends

27  that the proceeds should have been held, not released to the
Warnick Creditors, pending resolution of that ownership dispute.

28

-9-

NOTICE OF MOTION AND MOTION TO CONSOLIDATE

DOCKET # 337

ORIGINAL

1 | DAVID R. WEINSTEIN (State Bar No. 082881)
SHARON Z. WEISS (State Bar No. 169446)
2 | ARAM ORDUBEGIAN (State Bar No. 185142)
WEINSTEIN, EISEN, WEISS & ROTHSCHILD LLP
3 | 1925 Century Park East, Suite 1150
Los Angeles, California 90067-2712
4 | Telephone (310) 203-9393
Facsimile (310) 203-8110

5

6 | Attorneys for Beverly Rodeo Development
Corporation and Fred Yassian

7

8 | UNITED STATES BANKRUPTCY COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | LOS ANGELES DIVISION

11

12 | In re                                   ) Bk. No. LA 99-49349 VZ
                                            )   [Chapter 7]
13 | RODEO CANON DEVELOPMENT          )
    CORPORATION,                          ) YASSIAN PARTIES' REPLY TO
14 |                                       ) OBJECTIONS TO TRUSTEE'S
              Debtor.                      ) SETTLEMENT MOTION;
15 |                                       ) DECLARATION OF FRED YASSIAN
                                           )
16 |                                       ) Date:    June 12, 2002
                                           ) Time:    11:00 a.m.
17 |                                       ) Place:   Courtroom 1368
                                           )          255 E. Temple Street
18 | _____)         Los Angeles, CA  90012

19 | ///

20 | ///

21 | ///

22 | ///

23 | ///

24 | ///

25 | ///

26 | ///

27 | ///

28 | ///

:\1417\1417.180.wpd
(10:04 am) jc

1   Proceeding"). A copy of that declaration, including its (Sub)Exhibits "A" and "F", is

2   attached hereto as Exhibit "3".

3           In the Perry Declaration filed in the Adversary Proceeding, paragraph

4   11 and (Sub)Exhibits "A" and "F" affirm the existence of the Brighton Way

5   Partnership, Beverly's 50% interest in it and that the Partnership's purpose was to

6   acquire and exploit the subject property. If anyone is to be judicially estopped, it is

7   the Perrys.[5]

8           Even apart from David Perry's disingenuous representations, the

9   Objectors cannot establish any of the elements of judicial estoppel. In the sale

10  proceeding, the issue of ultimate ownership of the property was not, and could not

11  have been, in issue. Disputed ownership and lien rights can only be resolved in an

12  adversary proceeding. Bankruptcy Rule 7001(2).[6]  In the sale proceeding, it was

13  sufficient for the Court to have observed that record title was in the Debtor's name and

14  the Partnership's claim to equitable title was disputed. As such, the Trustee could sell

15  the property and the disputed interest was removed to the proceeds under § 363(f).

16  The Court did not reach and could not have reached, much less decided, the ownership

17  question itself.

18          The ownership question has now been addressed, since the Adversary

19  Proceeding is where it would be otherwise decided, soon. The Trustee has canvassed

20  the evidence, including seemingly countless representations by the Perrys, and

21  decided that stipulating to the existence of the Partnership, Beverly's role in it and

22  the Partnership's ownership of the property (phrased in the Second Deal Term Sheet

23  as "co-ownership"), and concluded that these stipulations reasonably approximate

24  what the litigated outcome would be and hence are within the range of

25

26      [5]      The Yassian Parties have already submitted numerous other
        filings the Perrys made in which they routinely admitted the same facts.

27

28      [6]      This Court rejected a motion by the Trustee to dismiss Beverly's
        counterclaims in the Adversary Proceeding, for the same reason.

DOCKET # 1

1  Charlie L. Hill, Esq. SBN 195456
   Kahlil J. McAlpin, Esq. SBN 199512
2  **PRYCE PARKER HILL, LLP**
   333 South Grand Avenue, Suite 2008
3  Los Angeles, California 90071
   Telephone:   (213) 626-8549
4  Facsimile:   (213) 626-3090

5  General Counsel for Robert D. Pryce,
   Chapter 7 Trustee

6

7

8  UNITED STATES BANKRUPTCY COURT   CENTRAL DISTRICT OF CALIFORNIA

9                          LOS ANGELES DIVISION

10

11  In re                          )
                                   )
12  RODEO CANON DEVELOPMENT,        )
    CORP.,                          )
13                                  )
                                   )
14            Debtor.               )
                                   )
15  ──────────────────────────     )
    ROBERT D. PRYCE, Chapter 7      )
16  Trustee,                        )
                                   )
17            Plaintiff,            )
                                   )
18  V.                             )
                                   )
19  FRED YASSIAN, dba BEVERLY       )
    RODEO DEVELOPMENT CORP.;        )
20  BEVERLY RODEO DEVELOPMENT       )
    CORP., an entity, CITY NATIONAL )
21  BANK; and DAVID PERRY and DANNY )
    PERRY dba  REEFSHARE LTD and    )
22  REEFSHARE, LTD., an entity,     )
                                   )
23            Defendants.           )
                                   )
24  ──────────────────────────

25

01/05/2001   **FILED**   16:52
**LA99-49349VZ**
DEBTOR:
   RODEO CANON DEVELOPMENT CORP
JUDGE: HON. V. Zurzolo - 467
TRUSTEE:
CHAPTER: 07  AD01-01014

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIF. ID: 701
REFEREN NO: LA-000011   CHG EST

CASE NO: LA99-49349-VZ

Chapter 7

ADV. CASE NO.:

COMPLAINT:

1.   **TO AVOID POST PETITION TRANSFERS**

2.   **TO COMPEL CUSTODIANS TO TURN OVER PROPERTY OF THE ESTATE AND FOR AN ACCOUNTING**

11 U.S.C. §§ 542, 543 and 549

Summons Issued  1-9-01

Answer Date  2-8-01

Hrg. Date 3.01.01 at 10:00 a.m.

26  The Complaint of ROBERT D. PRYCE, Chapter 7 Trustee (hereinafter "Trustee" or

27  "Plaintiff"), herein, respectfully alleges:

28  ///

1.    Plaintiff is the duly qualified and acting Chapter 7 Trustee in this case.

2.    The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E). Venue is proper in this Court under 28 U.S.C. § 1409, because Debtor's bankruptcy case is pending in the Central District of California.

3.    This case was commenced on October 27, 1999, by the filing of a voluntary petition for relief under Chapter 11 of Title 11, United States Bankruptcy Code. Debtor is a corporation with David Perry and Danny Perry as its principles. The case was converted to a Chapter 7 case on November 1, 2000.

4.    Debtor is the legal owner of record title, of the real property located at 9615 Brighton Way, Beverly Hills, California 90210 (hereinafter "Brighton Way Property"). Moreover,   Debtor's petition lists the Brighton Way Property as an asset of the estate.

5.    Plaintiff is informed and believes that Debtor and Fred Yassian dba Beverly Rodeo Development Corporation (hereinafter "Beverly") each own a 50% interest in the 9615 Brighton Way Partnership (hereinafter "BWP") dba Golden Triangle Building (hereinafter "GTB").

6.    Prior to the commencement of the case the GTB established checking account number # 001-764-276 at City National Bank, 400 North Roxbury Drive, Beverly Hills, California 90210 (hereinafter "City National"), among other accounts. Beverly and Debtor, through their principles or agents, operated and managed the Brighton Way Property and deposited into various accounts, including the subject account, rents collected from tenants located upon the Brighton Way Property.

///

- 2 -

7.    Plaintiff is informed and believes that Beverly and Debtor, through their principles or agents, managed and operated the Brighton Way Property during the pendency of the Chapter 11 case. Beverly and Debtor, through their principles or agents, collected rents and deposited the rents into City National Bank checking account number 001-764-276, among others. Beverly and Debtor, through their principles or agents, also paid management and operational expenses for the Brighton Way Property through the City National Bank checking account(s).

8.    Plaintiff is informed and believes that City National Bank is currently holding the sum of $8,810.58 in checking account number 001-764-276. These funds derived from the rents paid by tenants at the Brighton Way Property. As such, the funds are cash flow from the Brighton Way Property and are property of the estate pursuant to 11 U.S.C. § 541. Moreover, the rents from the Brighton Way Property are assigned to various secured creditors of debtor and are cash collateral of those creditors pursuant to 11 U.S.C. §363.

9.    During the pendency of the Chapter 11 case Beverly and Debtor, through their principles or agents, also made distributions to various entities, including but not limited to, Beverly, Debtor and Reefshare, Ltd., a separate entity of David and Danny Perry. A true accurate and complete copy of Plaintiff's counsel's correspondence of November 30, 2000, summarizing the distributions and demanding turnover of the property of the estate is attached hereto as *Exhibit "A"* and is incorporated herein by this reference.

10.    Based upon all records in Plaintiff's custody and control, Plaintiff is informed and believes that Beverly and Debtor, through their principles or agents, made disbursements from rents to Beverly in the amount of $334,000.00 from October 27, 1999, through and including October 2000. Beverly and Debtor, through their principles or agents, made these disbursements without a Court order.

- 3 -

11.    Based upon all records in Plaintiff's custody and control, Plaintiff is informed and believes that Beverly and Debtor, through their principles or agents, made disbursements to Reefshare, Ltd., in the amount of $125,500.00 from October 27, 1999, through and including October 2000.

12.    Based upon all records in Plaintiff's custody and control, Plaintiff is informed and believes that Beverly and Debtor, through their principles or agents, made disbursements/transfers to Debtor in the amount of $1,000.00 from October 27, 1999, through and including October 2000.

13.    Based upon all records in Plaintiff's custody and control, Plaintiff is informed and believes that Beverly and Debtor, through their principles or agents, made disbursements/transfers to an unknown person or entity in the amount of $150,000.00 on April 10, 2000. A true, accurate and complete copy of the ledger which evidences the entry "to open" is attached hereto as *Exhibit "B"* and is incorporated herein by this reference.

14.    Plaintiff is informed and believes and hereby alleges that the afore-mentioned distributions in the total amount of $610,500.00, were made without a Court Order, without approval of the Office of the United States Trustee and have caused damages to Debtor's estate.

## FIRST CAUSE OF ACTION

### (Avoid Transfer - Under 11 U.S.C. § 549)

### (Against Fred Yassian dba Beverly Rodeo Development)

15.    Plaintiff realleges and incorporates herein by this reference paragraphs 1 through 14, inclusive and they are incorporated herein by this reference.

- 4 -

16.     Based upon all records in Plaintiff's custody and control, Plaintiff is informed and believes that Beverly and Debtor, through their principles or agents, made disbursements/transfers to Beverly in the amount of $334,000.00 from October 27, 1999, through and including October 2000. These disbursement/transfers to Beverly were made post-petition and are avoidable by the Trustee pursuant to 11 U.S.C. §549.

17.     Plaintiff believes and alleges that the $334,000.00 is now in the possession of Beverly. Plaintiff has demanded that Beverly turnover the $334,000.00 in alleged distributions it received from October 27, 1999, through and including October 2000.

18.     Beverly has failed and refused, and continues to fail and refuse, to turnover the $334,000.00 as demanded by Plaintiff.

# SECOND CAUSE OF ACTION

## (Turnover - Under 11 U.S.C. §§ 542 and 543)

## (Against Fred Yassian dba Beverly Rodeo Development)

19.     Plaintiff realleges and incorporates herein by this reference paragraphs 1 through 18, inclusive and they are incorporated herein by this reference.

# THIRD CAUSE OF ACTION

## (Avoid Transfer - Under 11 U.S.C. § 549)

## (Against Danny Perry and David Perry dba Reefshare, Ltd.)

20.     Plaintiff realleges and incorporates herein by this reference paragraphs 1 through 14, inclusive and they are incorporated herein by this reference.

///

///

21.    Based upon all records in Plaintiff's custody and control, Plaintiff is informed and believes that Beverly and Debtor, through their principles or agents, made disbursements to Reefshare, Ltd. in the amount of $125,500.00 from October 27, 1999, through and including October 2000. These disbursement/transfers to Reefshare, Ltd. were made post-petition and are avoidable by the Trustee pursuant to 11 U.S.C. §549.

22.    Plaintiff alleges that the $125,500.00 is now in the possession of Reefshare, Ltd. Plaintiff has demanded that Reefshare, Ltd. turnover the $125,500.00 in alleged distributions it received from October 27, 1999, through and including October 2000.

23.    Reefshare, Ltd. has failed and refused, and continues to fail and refuse, to turnover the $125,500.00 as demanded by Plaintiff.

## FOURTH CAUSE OF ACTION

### (Turnover - Under 11 U.S.C. §§ 542 and 543)

### (Against Danny Perry and David Perry dba Reefshare, Ltd.)

24.    Plaintiff realleges and incorporates herein by this reference paragraphs 1 through 14 and 20 through 23, inclusive and they are incorporated herein by this reference.

## FIFTH CAUSE OF ACTION

### (Avoid Transfer - Under 11 U.S.C. § 549)

### (Against City National Bank)

25.    Plaintiff realleges and incorporates herein by this reference paragraphs 1 through 14, inclusive and they are incorporated herein by this reference.

///

///

- 6 -

26.    Based upon all records in Plaintiff's custody and control, Plaintiff is informed and believes that Beverly and Debtor, through their principles or agents, made deposits of estate property into City National checking account number 001-764-276, and all other accounts through and including November 2000. These deposits, disbursement/transfers were made post-petition and are avoidable by the Trustee pursuant to 11 U.S.C. §549.

## SIXTH CAUSE OF ACTION

### (Turnover - Under 11 U.S.C. §§ 542 and 543)

### (Against City National Bank)

27.    Plaintiff realleges and incorporates herein by this reference paragraphs 1 through 14 and 26, inclusive and they are incorporated herein by this reference.

28.    Plaintiff alleges that City National is currently holding $8,810.58 in checking account number 001-764-276. Plaintiff further alleges that City National may hold other funds which are property of debtor's estate in other presently unidentified accounts.

29.    City National has failed and refused, and continues to fail and refuse, to turnover the $8,810.58, plus any interest as demanded by Plaintiff and any other proceeds wrongfully withheld by it. True, accurate and complete copies of correspondence demanding turnover of funds are attached hereto as *Exhibit "C"* and are incorporated herein by this reference.

WHEREFORE, Plaintiff prays that this Court enter an Order jointly and severally against all Defendants as follows:

1.    that the above-described transfers are avoided pursuant to 11 U.S.C. § 549;

///

2.  that Defendants and each of them as custodians within the meaning of 11 U.S.C. § 543 be ordered to immediately surrender to the Trustee property of the estate described herein;

3.  that Defendants be ordered to render an accounting to Plaintiff and the Court of property of the Debtor, or proceeds from such property that at any time came into the possession, custody or control of the custodian;

4.  for reasonable attorneys fees and costs of suit incurred herein; and

5.  for such other and further relief as the Court deems just and proper.

Dated:    January 5, 2001

PRYCE PARKER HILL, LLP

By:

Charlie L. Hill, Esq.
Kahlil J. McAlpin, Esq.

General Counsel for
Robert D. Pryce, Chapter 7 Trustee

\\Comserver\wpdocs\CLIENT\841\841.90–Rodeo Canon Development Corp\Pleadings\Adversary complaint for Turnover.wpd

DOCKET # 43

1   DAVID R. WEINSTEIN (State Bar No. 082881)
2   ALEXANDRA P. OLENCZUK (State Bar No. 172937)
   WEINSTEIN & EISEN
   A Professional Corporation
3   1925 Century Park East, Suite 1150
   Los Angeles, California 90067-2712
4   Telephone (310) 203-9393
   Facsimile (310) 203-8110
5

6   Attorneys for Fred Yassian and
   Beverly Rodeo Development Corporation

7

8

9          UNITED STATES BANKRUPTCY COURT

          CENTRAL DISTRICT OF CALIFORNIA

10             LOS ANGELES DIVISION

11   In re

12   RODEO CANON DEVELOPMENT      )  Bk. No. LA 99-49349 VZ
   CORP.,                     )  [Chapter 7]
13

14         Debtor.

15   ROBERT D. PRYCE, Chapter 7
   Trustee,
16                       )  Adv. No. LA 01-01014 VZ

17       Plaintiffs,          )  DEFENDANTS FRED YASSIAN'S AND
                        BEVERLY RODEO DEVELOPMENT
18      v.                    CORPORATION'S FIRST AMENDED
                        ANSWER TO COMPLAINT:
19   FRED YASSIAN, dba BEVERLY    )  (1)    TO AVOID POST PETITION
   RODEO DEVELOPMENT CORP.;    )          TRANSFERS
20   BEVERLY RODEO DEVELOPMENT   )  (2)    TO COMPEL CUSTODIANS TO
   CORP., an entity, CITY NATIONAL  )          TURN OVER PROPERTY OF
21   BANK; AND DAVID PERRY AND    )          THE ESTATE AND FOR AN
   DANNY PERRY dba REEFSHARE    )          ACCOUNTING
22   LTD and REEFSHARE, LTD., an    )
   entity,                        )  COUNTERCLAIMS FOR:
23                        )  (1)    DECLARATORY RELIEF;
       Defendants.         )  (2)    TURNOVER AND
24                        )          ACCOUNTING
25   FRED YASSIAN, an Individual; AND  )
   BEVERLY RODEO DEVELOPMENT  )  CROSS-COMPLAINT FOR:
26   CORPORATION, a California      )  (1)    BREACH OF CONTRACT;
   Corporation,                )  (2)    BREACH OF FIDUCIARY
27                       )          DUTY;
      Counter-Plaintiffs,     )  (3)    CONVERSION;
28                       )  (4)    UNJUST ENRICHMENT,
   [Caption continued on next page]  )          ACCOUNTING, AND
                      )          CONSTRUCTIVE TRUST; AND
                      )  (5)    DECLARATORY RELIEF

f:\CLIENT\1417\1417-20.adv.wpd\1417-20.002.wpd
1:00 am) jc

1 | v. |
2 | ROBERT D. PRYCE, Chapter 7 |
3 | Trustee for the Bankruptcy Estate of Rodeo Canon Development Corporation, |
4 | |
5 | Counter-Defendants. |
6 | |
7 | FRED YASSIAN, an Individual; AND BEVERLY RODEO DEVELOPMENT |
8 | CORPORATION, a California Corporation, |
9 | |
10 | Cross-Plaintiffs, |
11 | v. |
12 | RODEO CANON DEVELOPMENT CORPORATION, a California |
13 | Corporation; DAVID PERRY, an individual; DANNY PERRY, an |
14 | individual; DELILA URMAN, an individual; REEFSHARE, LTD., an |
15 | entity; ALLAN WARNICK, an individual; JILL WARNICK, an |
16 | individual; WILLIAM AND ANN WARNICK, as Trustees of the |
17 | William and Ann Warnick Family Living Trust |
18 | |
19 | Cross-Defendants. |

**Status Conference**
DATE:
TIME:
PLACE:     Courtroom 1368
           255 E. Temple Street
           Los Angeles, CA 90012

20  Fred Yassian ("Yassian") and Beverly Rodeo Development Corporation

21  ("Beverly Rodeo") (collectively, "Defendants"), represent and allege as follows in

22  response to the *Complaint: (1) To Avoid Post Petition Transfers (2) To Compel*

23  *Custodians to Turn Over Property of the Estate and For an Accounting* (the

24  "Complaint") filed by the Chapter 7 Trustee, Robert D. Pryce (the "Trustee"):

25        1.     The Defendants admit the allegations contained in paragraph 1 of the

26  Complaint.

27        2.     The Defendants admit the allegations contained in paragraph 2 of the

28  Complaint.

3.      The Defendants admit the allegations contained in paragraph 3 of the Complaint.

4.      With respect to the allegations contained in paragraph 4 of the Complaint, the Defendants admit that title to the real property located at 9615 Brighton Way, Beverly Hills, California 90210 (the "Real Property") is held in the name of the Debtor, and that the Real Property is listed in the Debtor's Schedule of Real Property (Schedule A).  The Defendants deny all other allegations contained in paragraph 4 of the Complaint.

5.      The Defendants deny the allegations contained in paragraph 5 of the Complaint.

6.      The Defendants deny the allegations contained in paragraph 6 of the Complaint.

7.      The Defendants deny the allegations contained in paragraph 7 of the Complaint.

8.      With respect to the allegations contained in paragraph 8 of the Complaint, the Defendants are without sufficient information to enable it to answer the allegation that City National Bank is currently holding the sum of $8,810.58 in checking account number 001-764-276, and based thereon, denies that allegation. The Defendants deny all other allegations contained in paragraph 8 of the Complaint.

9.      The Defendants deny the allegations contained in paragraph 9 of the Complaint.

10.     With respect to the allegations contained in paragraph 10 of the Complaint, the Defendants admit that any disbursements from checking account no. 001-764-276 were made without a Court order.  The Defendants deny all other allegations contained in paragraph 10 of the Complaint.

11.     The Defendants deny the allegations contained in paragraph 11 of the Complaint.

1    12.    The Defendants deny the allegations contained in paragraph 12 of the

2 Complaint.

3    13.    The Defendants deny the allegations contained in paragraph 13 of the

4 Complaint.

5    14.    With respect to the allegations contained in paragraph 14 of the

6 Complaint, the Defendants admit that any disbursements from checking account no.

7 001-764-276 were made without a Court order.  The Defendants deny all other

8 allegations contained in paragraph 14 of the Complaint.

9

10    **ANSWER TO FIRST CAUSE OF ACTION**

11

12    15.    The Defendants deny the allegations contained in paragraph 15 of the

13 Complaint.

14    16.    The Defendants deny the allegations contained in paragraph 16 of the

15 Complaint.

16    17.    The Defendants deny the allegations contained in paragraph 17 of the

17 Complaint.

18    18.    The Defendants deny the allegations contained in paragraph 18 of the

19 Complaint.

20

21    **ANSWER TO SECOND CAUSE OF ACTION**

22

23    19.    The Defendants deny the allegations contained in paragraph 19 of the

24 Complaint.

25 / / /

26 / / /

27 / / /

28 / / /

OME\CLIENT\1417\1417-20.adv.wpd\1417-20.002.wpd
`1 (11:00 am) jc

4

## ANSWER TO THIRD CAUSE OF ACTION

20.    The Defendants deny the allegations contained in paragraph 20 of the Complaint.

21.    As to the allegations contained in paragraph 21 of the Complaint, the Defendants are without sufficient information to enable them to answer paragraph 21 of the Complaint, and based thereon, denies the allegations therein.

22.    As to the allegations contained in paragraph 22 of the Complaint, the Defendants are without sufficient information to enable them to answer paragraph 22 of the Complaint, and based thereon, denies the allegations therein.

23.    As to the allegations contained in paragraph 23 of the Complaint, the Defendants are without sufficient information to enable them to answer paragraph 23 of the Complaint, and based thereon, denies the allegations therein.

## ANSWER TO FOURTH CAUSE OF ACTION

24.    As to the allegations contained in paragraph 24 of the Complaint, the Defendants are without sufficient information to enable them to answer paragraph 24 of the Complaint, and based thereon, denies the allegations therein.

## ANSWER TO FIFTH CAUSE OF ACTION

25.    The Defendants deny the allegations contained in paragraph 25 of the Complaint.

26.    As to the allegations contained in paragraph 26 of the Complaint, the Defendants are without sufficient information to enable them to answer paragraph 26 of the Complaint, and based thereon, denies the allegations therein.

///

## ANSWER TO SIXTH CAUSE OF ACTION

27.    The Defendants deny the allegations contained in paragraph 26 of the Complaint.

28.    As to the allegations contained in paragraph 28 of the Complaint, the Defendants are without sufficient information to enable them to answer paragraph 28 of the Complaint, and based thereon, denies the allegations therein.

29.    As to the allegations contained in paragraph 29 of the Complaint, the Defendants are without sufficient information to enable them to answer paragraph 29 of the Complaint, and based thereon, denies the allegations therein.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

30.    The Complaint fails to state any claim upon which relief can be granted in favor of the Trustee against the Defendants.

## SECOND AFFIRMATIVE DEFENSE
### (Distributed Funds Were Not Property of the Estate)

31.    Any money which was distributed out of account no. 001-764-276 to Yassian or Beverly Rodeo was not property of the bankruptcy estate.

/ / /

/ / /

/ / /

/ / /

## COUNTERCLAIM

Fred Yassian and Beverly Rodeo ("Counter-plaintiffs") allege:

### I.

### JURISDICTION, VENUE AND PARTIES

1.      This action is a core proceeding arising in the above-captioned bankruptcy case, which is now pending in this judicial district, and arising under Title 11 of the United States Code. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b)(2)(A),(K) and (O) to hear and to determine this proceeding and to enter an appropriate final order and judgment.

2.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1409.

3.      This action is an adversary proceeding pursuant to Bankruptcy Rule 7001. In accordance with Bankruptcy Rule 7008, the adversary proceeding initiated by this complaint is a core proceeding.

4.      The above-captioned bankruptcy case was commenced by the filing of a voluntary Chapter 11 petition on October 27, 1999 (the "Petition Date") in the Central District of California, Los Angeles Division. The case was converted to one under Chapter 7 on November 1, 2000 (the "Conversion Date").

5.      The counterclaim defendant, Robert D. Pryce, is the duly appointed and acting Chapter 7 trustee (the "Trustee") for the bankruptcy estate of Rodeo Canon Development Corporation (the "Bankruptcy Estate").

6.      The Debtor, Rodeo Canon Development Corporation (the "Debtor"), is a California Corporation.

7.      The Trustee is the successor in interest to the Debtor.

8.      The Counter-plaintiffs are informed and believe and thereon allege that the principals of the Debtor are David Perry and Danny Perry.

4E\CLIENT\1417\1417-20.adv.wpd\1417-20.002.wpd
(11:00 am) jc

9.    Reefshare Ltd. is an entity formed under the laws of the State of California, whose principal is David Perry.

10.    Beverly Rodeo is a California corporation.  Fred Yassian ("Yassian") is the majority shareholder of Beverly Rodeo.

11.    Yassian is the designated representative of Beverly Rodeo.

## II.

## GENERAL ALLEGATIONS

12.    On or about January 1, 1990, Beverly Rodeo and the Debtor entered into a partnership known as the 9615 Brighton Way Partnership (the "Brighton Way Partnership"), for the purpose of acquiring, constructing upon, managing and ultimately selling that certain parcel of real property located at 9615 Brighton Way, Beverly Hills, California 90210 (the "Real Property").

13.    The Brighton Way Partnership is a California general partnership.

14.    The Real Property was commonly known as the Golden Triangle Building, and the Brighton Way Partnership did business under the fictitious business name the "Golden Triangle Building Partnership".

15.    Beverly Rodeo is an agent of the Brighton Way Partnership under Cal. Corp. Code § 16301.

16.    Prior to the end of September, 1990, Beverly Rodeo invested approximately $1,885,082.00 in the Brighton Way Partnership.

17.    In 1990, the Real Property was purchased (the "Purchase"), using Brighton Way Partnership funds, including money invested in, or provided to, the Brighton Way Partnership by Beverly Rodeo.

///

///

///

IME\CLIENT\1417\1417-20.adv.wpd\1417-20.002.wpd
I (11:00 am) jc

8

18.    At the time of the Purchase, title to the Real Property was taken in only the Debtor's name. However, it was the clear understanding and expressed intent of the partners that the Real Property was the Property of the Brighton Way Partnership and that the Brighton Way Partnership was the beneficial owner of the Real Property. It was further understood and agreed that the Debtor thus acquired and held only bare legal title to the Real Property and the Debtor held that title in trust for the benefit of the Brighton Way Partnership.

19.    Since 1990, the Real Property has been listed in the tax returns of the Brighton Way Partnership, indicating the Partnership's ownership and the Real Property.

20.    On or about October 26, 1993, the Debtor obtained a loan in the amount of $850,000.00 from Allan and Jill Warnick (the "1993 Loan"). The Note Secured by Deed of Trust, dated October 26, 1993, was signed by Danny Perry as Chief Executive Officer of the Debtor, and by David Perry as Secretary of the Debtor.

21.    The terms of the 1993 Loan called for interest at 8% and payment on or before November 1, 1995.

22.    A Trust Deed securing the 1993 Loan was recorded against the Real Property on November 3, 1993.

23.    At or about the time the Debtor obtained the 1993 Loan, the Debtor and Beverly Rodeo entered into an *Agreement*, regarding the 1993 Loan (the "1993 Loan Agreement"). The 1993 Loan Agreement was signed by David Perry as president of the Debtor, Danny Perry as C.F.O of the Debtor, and Yassian as president of Beverly Rodeo. The 1993 Loan Agreement provided in pertinent part:

> On November 1, 1993, the parties are closing a loan in
> the amount of $850,000 to be recorded against the
> property on 9615 Brighton Way. This loan is for the
> benefit of Rodeo Canon Development Corp. only. The
> partnership has agreed to allow this loan to be recorded

on the 100% ownership of the property. However, in

fact the repayment of this loan as well as the interest is

the sole responsibility of Rodeo Canon Development

Corp.

Beverly Rodeo Corp. is solely accommodating Rodeo

Canon to obtain this loan. It is allowing it's *[sic]* 50%

equity to be used as collateral for Rodeo Canon's

indebtedness. Rodeo Canon is taking out this loan for a

period of two years at 8% interest only. Should Rodeo

Canon in any way fail to pay in principle *[sic]* or

interest that is due on this loan then Beverly Rodeo

shall have the option to make this loan whole and

Rodeo Canon's share in the Golden Triangle

Partnership shall be decreased proportionately.

24. On November 1, 1993, the Debtor and Beverly Rodeo entered into an

"Amendment to Partnership Agreement", which provided in pertinent part:

> 3. Title to the Real Property is held in the name of
> [the Debtor] for the benefit of the Partnership.
>
> . . . .
>
> 1. Notwithstanding any provision in the Agreement
> to the contrary, the Real Property cannot be sold
> or refinanced, or additional financing placed
> thereon, without the unanimous consent, in
> writing, of David Perry and Danny Perry for [the
> Debtor] and Fred Yassian for Beverly [Rodeo]

25. On November 4, 1993, the Debtor and Beverly Rodeo recorded a

"Memorandum of Agreement" with respect to the Real Property. The Memorandum

of Agreement provided in pertinent part:

1          Reference is made to the Articles of Partnership (the

2          "Agreement") of 9615 Brighton Way Partnership, a

3          General Partnership dba Golden Triangle Building

4          Partnership, dated as of January 1, 1990 and

5          Amendment to Partnership Agreement, (the

6          "Amendment") dated as of November 1, 1993, both with

7          regard to the real property commonly known as 9615

8          Brighton Way, Beverly Hills, California 90210, more

9          particularly described in Exhibit "A" attached hereto

10         and made a part hereof, (the "Real Property").

11         Reference is further made to the Agreement and the

12         Amendment for a more complete statement of the

13         terms, conditions and provisions thereof, and the

14         rights, obligations and restrictions of Rodeo and

15         Beverly therein.

16     26.    The Debtor failed to pay the 1993 Loan.

17     27.    On or about August 11, 1992, Sharam F. Ravan and Soheila Ravan

18 loaned $98,000.00 to the Debtor (the "Ravan Loan").

19     28.    On or about May 2, 1995, Yassian, on behalf of Beverly Rodeo,

20 purchased the Ravan Loan for $100,000.00.

21     29.    On or about April 15, 1996, Beverly Rodeo loaned $299,000.00 to the

22 Debtor. Thus, by mid-April, 1996, the Debtor was liable to Beverly Rodeo for

23 approximately $400,000.00 (the "$400,000.00 Loan").

24     30.    On or about April 16, 1996, a *Straight Note* in the amount of

25 $40,000.00, representing points and interest on the $400,000.00 loan was signed by

26 David Perry as C.F.O. of the Debtor, by David Perry as C.F.O. of Reefshare Ltd. and

27 by David Perry as an individual guarantor.

28   / / /

31.    On April 15, 1996, Beverly Rodeo recorded a Trust Deed against the Real Property to secure the $400,000.00 Loan (the "5th Trust Deed").

32.    Schedule A to the Debtor's Bankruptcy Schedules filed on or about November 10, 1999, provides in pertinent part:

> The Debtor is the titleholder of record of the property.
>
> The cash flow from the property is owned by the 9615 Brighton Way Partnership, a general partnership in which the Debtor owns a 50% interest.

33.    In several writings filed after the Petition Date and prior to the Conversion Date, the Debtor, as debtor-in-possession, represented and admitted that the Real Property was the property of the Brighton Way Partnership.

34.    Yassian, on behalf of Beverly Rodeo, served as the manager of the Real Property from the Petition Date through the Conversion Date. Yassian collected rents (the "Rents") from the Real Property and deposited those Rents in City National Bank account no. 001-764-276 (the "Brighton Way Partnership Account"). Expenses for the Real Property were paid from funds in the Brighton Way Partnership Account.

35.    Following the Conversion Date, the Trustee has collected the Rents from the Real Property. Since the Conversion Date, Beverly Rodeo has not received any payments from the Rents on account of its partnership interest in the Brighton Way Partnership.

36.    At a hearing held in the United States Bankruptcy Court on March 22, 2001, a sale of the Real Property for $10,500,000.00 (the "Sale Proceeds") was approved.

37.    Beverly Rodeo has not been paid either by the Debtor or the Trustee on account of the $400,000.00 loan, the 5th Trust Deed or the *Straight Note* identified in paragraph 29, above.

///

# FIRST COUNTERCLAIM FOR RELIEF

## (Declaratory Relief)

[11 U.S.C. § 541; Cal. Corp. Code §§ 16203, 16501; 16502; Fed.R.Bankr.P. 7001]

38.    The Counter-plaintiffs repeat the allegations in paragraphs 1-37 of this Counterclaim with the same effect as if set forth here.

39.    At all material times prior to the Petition Date, the Real Property was property of, or was equitably owned by, the Brighton Way Partnership.

40.    The Debtor was a partner in the Brighton Way Partnership at all material times.

41.    Beverly Rodeo was a partner in the Brighton Way Partnership at all material times.

42.    The Brighton Way Partnership is not a debtor in any bankruptcy case.

43.    The Debtor was not a co-owner of the Real Property and had no equitable interest in the Real Property that could be transferred, either voluntarily or involuntarily.  At most, the Debtor had bare legal title to the Real Property which it held in trust for the Brighton Way Partnership.

44.    The only transferable interest of the Debtor in the Brighton Way Partnership was the Debtor's share of the profits and losses of the Brighton Way Partnership and the Debtor's right to receive distributions.

45.    The Real Property was not property of the Bankruptcy Estate, other than to the extent of bare legal title.

46.    The Sale Proceeds are property of the Brighton Way Partnership.

47.    The Sale Proceeds are not property of the Bankruptcy Estate.

48.    Beverly Rodeo is entitled to a declaration from the Court that the Sale Proceeds are not property of the Bankruptcy Estate.

49.    Beverly Rodeo is also entitled to a declaration from the Court that the Bankruptcy Estate's interest in the Sale Proceeds is limited to the Debtor's share of

E:\CLIENT\1417\1417-20.adv.wpd\1417-20.002.wpd
11:00 am) jc

13

1    the profits and losses of the Brighton Way Partnership and the Debtor's right to

2    receive distributions.

3

4    ## SECOND COUNTERCLAIM FOR RELIEF

5    ### (Declaratory Relief)

6    [11 U.S.C. § 506]

7

8    50.    The Counter-plaintiffs repeat the allegations in paragraphs 1-49 of

9    this Counterclaim with the same effect as if set forth here.

10    51.    On the Petition Date, the Debtor owed Beverly Rodeo $400,000.00

11    plus interest on account of the $400,000.00 Loan.

12    52.    The $400,000.00 Loan was secured by a 5th Trust Deed against the

13    Real Property.

14    53.    Counter-plaintiffs are entitled to a declaration that Beverly Rodeo's

15    $400,000.00 Loan was secured by a valid and enforceable 5th Trust Deed.

16    54.    Counter-plaintiffs are also entitled to payment out of the Sale

17    Proceeds on account of the 5th Trust Deed.

18

19    ## THIRD COUNTERCLAIM FOR RELIEF

20    ### (Declaratory Relief)

21    [11 U.S.C. § 541; Cal. Corp. Code §§ 16203, 16501; Fed.R.Bankr.P. 7001]

22

23    55.    The Counter-plaintiffs repeat the allegations in paragraphs 1-54 of

24    this Counterclaim with the same effect as if set forth here.

25    56.    At all material times prior to the Conversion Date, the Rents from the

26    Real Property were property of the Brighton Way Partnership.

27    57.    At all material times, the Debtor was a partner in the Brighton Way

28    Partnership.

14

1       58.    At all material times, Beverly Rodeo was a partner in the Brighton
2  Way Partnership.

3       59.    The Brighton Way Partnership is not a debtor in any bankruptcy case.

4       60.    The Debtor was not a co-owner of the Rents and had no equitable
5  interest in the Rents that could be transferred, either voluntarily or involuntarily.
6  At most, the Debtor held bare legal title to the Real Property, which it held in trust
7  for the Brighton Way Partnership.

8       61.    The only transferable interest of the Debtor in the Brighton Way
9  Partnership was the Debtor's share of the profits and losses of the Brighton Way
10  Partnership and the Debtor's right to receive distributions.

11       62.    The Rents were and are not property of the Bankruptcy Estate.

12       63.    Beverly Rodeo is entitled to a declaration from the Court that the
13  Rents were and are not property of the Bankruptcy Estate.

14       64.    Beverly Rodeo is also entitled to a declaration from the Court that the
15  Bankruptcy Estate's interest in the Rents was and is limited to the Debtor's share of
16  the profits and losses of the Brighton Way Partnership and the Debtor's right to
17  receive distributions.

18

19  ## FOURTH COUNTERCLAIM FOR RELIEF

20  ### (Declaratory Relief)

21  [11 U.S.C. § 541; Cal. Corp. Code §§ 16203, 16501; Fed.R.Bankr.P. 7001]

22

23       65.    The Counter-plaintiffs repeat the allegations in paragraphs 1-64 of
24  this Counterclaim with the same effect as if set forth here.

25       66.    At all material times, the Rents from the Real Property were property
26  of the Brighton Way Partnership.

27       67.    At all material times, the Brighton Way Partnership Account was
28  property of the Brighton Way Partnership.

OME\CLIENT\1417\1417-20.adv.wpd\1417-20.002.wpd
\1 (11:00 am) jc

15

1    68.    At all material times, the Debtor was a partner in the Brighton Way

2 Partnership.

3    69.    At all material times, Beverly Rodeo was a partner in the Brighton

4 Way Partnership.

5    70.    The Brighton Way Partnership is not a debtor in any bankruptcy case.

6    71.    The Debtor was not a co-owner of the Brighton Way Partnership

7 Account and had no equitable interest in the Brighton Way Partnership Account that

8 could be transferred, either voluntarily or involuntarily. At most, the Debtor held

9 bare legal title to the Real Property, which it held in trust for the Brighton Way

10 Partnership.

11    72.    The only transferable interest of the Debtor in the Brighton Way

12 Partnership was the Debtor's share of the profits and losses of the Brighton Way

13 Partnership and the Debtor's right to receive distributions.

14    73.    The Brighton Way Partnership Account was not property of the

15 Bankruptcy Estate.

16    74.    Beverly Rodeo is entitled to a declaration from the Court that the

17 Brighton Way Partnership Account was not and is not property of the Bankruptcy

18 Estate.

19    75.    Beverly Rodeo is also entitle to a declaration from the Court that the

20 Bankruptcy Estate's interest in the Brighton Way Partnership Account was and is

21 limited to the Debtor's share of the profits and losses of the Brighton Way

22 Partnership and the Debtor's right to receive distributions.

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

\HOME\CLIENT\1417\1417-20.adv.wpd\1417-20.002.wpd
8/01 (11:00 am) jc

16

# FIFTH COUNTERCLAIM FOR RELIEF

## (Declaratory Relief)

[11 U.S.C. § 541; Cal. Corp. Code §§ 16203, 16501; Fed.R.Bankr.P. 7001]

76.    The Counter-plaintiffs repeat the allegations in paragraphs 1-75 of this Counterclaim with the same effect as if set forth here.

77.    At all material times, the Rents from the Real Property were property of the Brighton Way Partnership.

78.    At all material times, the Brighton Way Partnership Account was property of the Brighton Way Partnership.

79.    At all material times, the Debtor was a partner in the Brighton Way Partnership.

80.    Any moneys transferred to Beverly Rodeo or Yassian out of the Brighton Way Partnership Account constituted Beverly Rodeo's share of the profits and losses of the Brighton Way Partnership.

81.    Beverly Rodeo and Yassian are entitled to a declaration from the Court that any moneys transferred to Beverly Rodeo or Yassian out of the Brighton Way Partnership Account constituted Beverly Rodeo's share of the profits and losses of the Brighton Way Partnership, and that such funds were not property of the Bankruptcy Estate.

# SIXTH COUNTERCLAIM FOR RELIEF

## (Accounting and Turnover)

[11 U.S.C. § 541; Fed.R.Bankr.P. 7001]

82.    The Counter-plaintiffs repeat the allegations in paragraphs 1-81 of this Counterclaim with the same effect as if set forth here.

/ / /

1    83.    Following the Conversion Date, Rents in an amount to be determined

2  at trial were collected by the Trustee.

3    84.    The Rents from the Real Property following the Conversion Date were

4  property of the Brighton Way Partnership.

5    85.    The Debtor was a partner in the Brighton Way Partnership.

6    86.    Beverly Rodeo is entitled to the Court's ruling that Beverly Rodeo is

7  entitled to an accounting of all Rents received, on or after the Conversion Date, by

8  the Trustee.

9    87.    Beverly Rodeo is entitled to payment of its partnership interest in the

10  Rents collected after the Conversion Date.

11

12                    **SEVENTH COUNTERCLAIM FOR RELIEF**

13                         **(Accounting and Turnover)**

14                    [11 U.S.C. § 541; Fed.R.Bankr.P. 7001]

15

16    88.    The Counter-plaintiffs repeat the allegations in paragraphs 1-87 of

17  this Counterclaim with the same effect as if set forth here.

18    89.    At all material times prior to the Petition Date, the Real Property was

19  property of the Brighton Way Partnership.

20    90.    At all material times, the Debtor was a partner in the Brighton Way

21  Partnership.

22    91.    The Brighton Way Partnership is not a debtor in any bankruptcy case.

23    92.    At all material times, Beverly Rodeo was a partner in the Brighton

24  Way Partnership.

25    93.    The Debtor was not a co-owner of the Real Property and had no

26  equitable interest in the Real Property that could be transferred, either voluntarily

27  or involuntarily.  At most, the Debtor held bare legal title to the Real Property, which

28  it held in trust for the Brighton Way Partnership.

1    94.    The only transferable interest of the Debtor in the Brighton Way

2    Partnership was the Debtor's share of the profits and losses of the Brighton Way

3    Partnership and the Debtor's right to receive distributions.

4    95.    The Real Property was not property of the Bankruptcy Estate, other

5    than to the extent of bare legal title.

6    96.    The Sale Proceeds are property of the Brighton Way Partnership.

7    97.    The Sale Proceeds are not property of the Bankruptcy Estate.

8    98.    Beverly Rodeo is entitled to the Court's ruling that Beverly Rodeo is

9    entitled to an accounting of the Sale Proceeds.

10    99.    Beverly Rodeo is entitled to an order directing the Trustee to turn over

11    to Beverly Rodeo a sum equal to its partnership interest in the proceeds of the Sale of

12    the Real Property.

13

14    ## PRAYER FOR RELIEF RE: COUNTERCLAIM

15

16    WHEREFORE, the Counter-plaintiffs pray for judgment as follows:

17

18    On the First Counterclaim for Relief:

19    (a)    For a declaration from the Court that the Sale Proceeds are not

20    property of the Bankruptcy Estate;

21    (b)    For a declaration from the Court that the Bankruptcy Estate's interest

22    in the Sale Proceeds is limited to the Debtor's share of the profits and losses of the

23    Brighton Way Partnership and the Debtor's right to receive distributions.

24

25    On the Second Counterclaim for Relief:

26    (a)    For a declaration that Beverly Rodeo's $400,000.00 Loan was secured

27    by a valid and enforceable 5th Trust Deed.

28    / / /

(b)     For payment out of the Sale Proceeds on account of the 5th Trust Deed.

## On the Third Counterclaim for Relief:

(a)     For a declaration from the Court that the Rents were not property of the Bankruptcy Estate.

(b)     For a declaration from the Court that the Bankruptcy Estate's interest in the Rents was limited to the Debtor's share of the profits and losses of the Brighton Way Partnership and the Debtor's right to receive distributions.

## On the Fourth Counterclaim for Relief:

(a)     For a declaration from the Court that the Brighton Way Partnership Account was not property of the Bankruptcy Estate.

(b)     For a declaration from the Court that the Bankruptcy Estate's interest in the Brighton Way Partnership Account was limited to the Debtor's share of the profits and losses of the Brighton Way Partnership and the Debtor's right to receive distributions.

## On the Fifth Counterclaim for Relief:

(a)     For a declaration from the Court that any moneys transferred to Beverly Rodeo or Yassian out of the Brighton Way Partnership Account constituted Beverly Rodeo's share of the profits and losses of the Brighton Way Partnership, and that such funds were not property of the Bankruptcy Estate and are not recoverable by the Trustee.

## On the Sixth Counterclaim for Relief:

(a)     For a determination of the amount of the Rents collected after the Conversion Date;

HOME\CLIENT\1417\1417-20.adv.wpd\1417-20.002.wpd
01 (11:00 am) jc

20

(b)    For an accounting of the Rents collected by the Trustee after the Conversion Date;

(c)    For a judgment in favor of Beverly Rodeo in the amount of its partnership share of the Rents collected after the Conversion Date;

(d)    For an order directing the Trustee to turn over such amounts to Beverly Rodeo.

On the Seventh Counterclaim for Relief:

(a)    For a determination of the amount of Beverly Rodeo's partnership interest in the proceeds of the Sale of the Real Property;

(b)    For an accounting of the Sale Proceeds;

(c)    For a judgment in favor of Beverly Rodeo in the amount of its partnership share of the Sale Proceeds;

(d)    For an order directing the Trustee to turn over such amounts to Beverly Rodeo.

On All Counterclaims for Relief:

(a)    For an award to the Counter-plaintiffs of costs of this action and attorneys' fees as the law may allow.

(b)    For such other relief as the Court may deem just and proper.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

HOME\CLIENT\1417\1417-20.adv.wpd\1417-20.002.wpd
.001 (11:00 a.m) jc

21

## CROSS-COMPLAINT

Fred Yassian and Beverly Rodeo ("Cross-plaintiffs") allege:

### I.

### JURISDICTION, VENUE AND PARTIES

1.     This action is a core proceeding arising in the above-captioned bankruptcy case, which is now pending in this judicial district, and arising under Title 11 of the United States Code. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b)(2)(B) and (O) to hear and to determine this proceeding and to enter an appropriate final order and judgment.

2.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1409.

3.     This action is an adversary proceeding pursuant to Bankruptcy Rule 7001. In accordance with Bankruptcy Rule 7008, the adversary proceeding initiated by this complaint is a core proceeding.

4.     The above-captioned bankruptcy case was commenced by the filing of a voluntary Chapter 11 petition on October 27, 1999 (the "Petition Date") in the Central District of California, Los Angeles Division. The case was converted to one under Chapter 7 on November 1, 2000 (the "Conversion Date").

5.     Robert D. Pryce is the duly appointed and acting Chapter 7 trustee (the "Trustee") for the bankruptcy estate of Rodeo Canon Development Corporation (the "Bankruptcy Estate").

6.     The Debtor and Cross-defendant, Rodeo Canon Development Corporation (the "Debtor"), is a California Corporation.

7.     The Cross-plaintiffs are informed and believe and thereon allege that the principals of the Debtor are Cross-defendants David Perry and Danny Perry.

8.     David and Danny Perry are brothers.

9.    The Cross-plaintiffs are informed and believe, and thereon allege that Cross-defendant Delila Urman is the sister of David and Danny Perry, and an agent of Cross-defendant Debtor and Cross-defendants David and Danny Perry.

10.    Cross-defendants William and Ann Warnick are the Trustees of the William and Ann Warnick Family Living Trust.

11.    Cross-defendants Allan Warnick and Jill Warnick are individuals who are related to William and Ann Warnick.

12.    Beverly Rodeo is a California corporation.  Fred Yassian ("Yassian") is the majority shareholder of Beverly Rodeo.

13.    Yassian is the designated representative of Beverly Rodeo.

## II.

## GENERAL ALLEGATIONS

14.    On or about January 1, 1990, Beverly Rodeo and the Debtor entered into a partnership known as the 9615 Brighton Way Partnership (the "Brighton Way Partnership"), for the purpose of acquiring, constructing upon, managing and ultimately selling that certain parcel of real property located at 9615 Brighton Way, Beverly Hills, California 90210 (the "Real Property").

15.    David Perry and Yassian, in their capacities as C.F.O.s of the Debtor and Beverly Rodeo, respectively, signed the Articles of Partnership of 9615 Brighton Way Partnership, dated January 1, 1990, on behalf of the Debtor and Beverly Rodeo.

16.    The Brighton Way Partnership is a California general partnership.

17.    Beverly Rodeo is an agent of the Brighton Way Partnership under Cal.Corp.Code § 16301.

18.    Prior to the end of September, 1990, Beverly Rodeo invested approximately $1,885,082.00 in the Brighton Way Partnership.

///

19.     In September, 1990, the Real Property was purchased (the "Purchase"), using Brighton Way Partnership funds, including money invested in or provided to the Brighton Way Partnership by Beverly Rodeo.

20.     At the time of the Purchase, title to the Real Property was taken in only the Debtor's name.  However, it was the clear understanding and  expressed intent of the partners that the Real Property was the Property of the Brighton Way Partnership and that the Brighton Way Partnership was the beneficial owner of the Real Property.  It was further understood and agreed that the Debtor thus acquired and held only bare legal title to the Real Property and the Debtor held that title in trust for the benefit of the Brighton Way Partnership.

21.     Since 1990, the Real Property has been included in the tax returns for the Brighton Way Partnership, indicating the Partnership's ownership of the Real Property.

22.     The Real Property was commonly known as the Golden Triangle Building, and the Brighton Way Partnership did business under the fictitious business name the "Golden Triangle Building Partnership".

23.     The rents (the "Rents") from the Real Property were deposited into City National Bank account no. 001-764-276 (the "Brighton Way Partnership Account").  Expenses for the Real Property were paid from funds in the Brighton Way Partnership Account.

24.     Prior to the Petition Date, Delila Urman served as manager of the Real Property.

25.     On or about October 26, 1993, the Debtor obtained a loan in the amount of $850,000.00 from Allan and Jill Warnick (the "1993 Loan").  The Note Secured by Deed of Trust, dated October 26, 1993, was signed by Danny Perry as Chief Executive Officer of the Debtor, and by David Perry as Secretary of the Debtor.

26.     The terms of the 1993 Loan called for interest at 8% and payment on or before November 1, 1995.

1    27.    A Trust Deed securing the 1993 Loan was recorded against the Real

2  Property on November 3, 1993.

3    28.    At or about the time the Debtor obtained the 1993 Loan, the Debtor

4  and Beverly Rodeo entered into an *Agreement*, regarding the 1993 Loan (the "1993

5  Loan Agreement"). The 1993 Loan Agreement was signed by David Perry as

6  president of the Debtor, Danny Perry as C.F.O of the Debtor, and Yassian as

7  president of Beverly Rodeo. The 1993 Loan Agreement provided in pertinent part:

8                On November 1, 1993, the parties are closing a loan in

9                the amount of $850,000 to be recorded against the

10               property on 9615 Brighton Way. This loan is for the

11               benefit of Rodeo Canon Development Corp. only. The

12               partnership has agreed to allow this loan to be recorded

13               on the 100% ownership of the property. However, in

14               fact the repayment of this loan as well as the interest is

15               the sole responsibility of Rodeo Canon Development

16               Corp.

17               Beverly Rodeo Corp. is solely accommodating Rodeo

18               Canon to obtain this loan. It is allowing it's 50% equity

19               to be used as collateral for Rodeo Canon's indebtedness.

20               Rodeo Canon is taking out this loan for a period of two

21               years at 8% interest only. Should Rodeo Canon in any

22               way fail to pay in principle or interest that is due on

23               this loan then Beverly Rodeo shall have the option to

24               make this loan whole and Rodeo Canon's share in the

25               Golden Triangle Partnership shall be decreased

26               proportionately.

27  / / /

28  / / /

29.    On November 1, 1993, the Debtor and Beverly Rodeo, through their respective representatives, David Perry and Yassian, entered into an "Amendment to Partnership Agreement", which provided in pertinent part:

       3.    Title to the Real Property is held in the name of [the Debtor] for the benefit of the Partnership.

         . . . .

       1.    Notwithstanding any provision in the Agreement to the contrary, the Real Property cannot be sold or refinanced, or additional financing placed thereon, without the unanimous consent, in writing, of David Perry and Danny Perry for [the Debtor] and Fred Yassian for Beverly [Rodeo]

30.    On November 4, 1993, the Debtor and Beverly Rodeo recorded a "Memorandum of Agreement" with respect to the Real Property.

31.    The Memorandum of Agreement was signed by Yassian, as president of Beverly Rodeo, by David Perry as president of the Debtor, and by Danny Perry as C.E.O. of the Debtor.

32.    The Memorandum of Agreement provided in pertinent part:

       Reference is made to the Articles of Partnership (the "Agreement") of 9615 Brighton Way Partnership, a General Partnership dba Golden Triangle Building Partnership, dated as of January 1, 1990 and Amendment to Partnership Agreement, (the "Amendment") dated as of November 1, 1993, both with regard to the real property commonly known as 9615 Brighton Way, Beverly Hills, California 90210, more particularly described in Exhibit "A" attached hereto and made a part hereof, (the "Real Property").

1  Reference is further made to the Agreement and the

2  Amendment for a more complete statement of the

3  terms, conditions and provisions thereof, and the

4  rights, obligations and restrictions of Rodeo and

5  Beverly therein.

6      33.    On or about January 26, 1998, the Debtor entered into a Loan

7  Extension Agreement with Alan and Jill Warnick regarding the 1993 Loan (the

8  "Extension"). The Loan Extension Agreement was signed by David Perry as

9  president of the Debtor. The Loan Extension Agreement extended the maturity date

10  of the 1993 Loan to December 31, 1998, and increased the interest on the loan to

11  14%.

12      34.    The Debtor and Allan and Jill Warnick did not obtain Beverly Rodeo's

13  written authorization for the Loan Extension Agreement, in direct contravention to

14  the Amendment to Partnership Agreement as referenced in the recorded

15  Memorandum of Agreement.

16      35.    On or about August 11, 1992, Sharam F. Ravan and Soheila Ravan

17  loaned $98,000.00 to the Debtor (the "Ravan Loan").

18      36.    On or about May 2, 1995, Yassian, on behalf of Beverly Rodeo,

19  purchased the Ravan Loan for $100,000.00.

20      37.    On or about April 15, 1996, Beverly Rodeo loaned $299,000.00 to the

21  Debtor. Thus, by mid-April, 1996, the Debtor was liable to Beverly Rodeo for

22  approximately $400,000.00 (the "$400,000.00 Loan").

23      38.    On or about April 16, 1996, a *Straight Note* in the amount of

24  $40,000.00, representing points and interest on the $400,000.00 loan was signed by

25  David Perry as C.F.O. of the Debtor, by David Perry as C.F.O. of Reefshare Ltd. and

26  by David Perry as an individual guarantor.

27      39.    On April 15, 1996, Beverly Rodeo recorded a Trust Deed against the

28  Real Property to secure the $400,000.00 Loan (the "5th Trust Deed").

HOME\CLIENT\1417\1417-20.adv.wpd\1417-20.002.wpd
/01 (11:00 am) jc

40.    On or about September 9, 1996, the Debtor obtained a loan in the amount of $950,000.00 (the "1996 Loan") from William and Ann Warnick, as Trustees of the William and Ann Warnick Family Trust (the "Warnick Trustees"). The Promissory Note related to the 1996 Loan, dated September 9, 1996, was signed by David Perry as CEO of the Debtor. David Perry also signed the Promissory Note as an individual guarantor and as a General Partner of Rodeo Canon and Associates, A California General Partnership, an additional guarantor.

41.    The 1996 Loan was secured by a 6th Trust Deed on the Real Property, which was recorded on October 7, 1996.

42.    Neither the Debtor nor the Warnick Trustees obtained Beverly Rodeo's written authorization for the 6th Trust Deed, in direct contravention of the Amendment to Partnership Agreement as referenced in the recorded Memorandum of Agreement.

43.    On or about August 1, 1997, the Debtor obtained a loan in the amount of $1,500,000.00 from William and Ann Warnick, as Trustees of the William and Ann Warnick Family Trust (the "1997 Loan"). The Promissory Note Secured by Deed of Trust (the "1997 Promissory Note") was signed by David Perry on behalf of the Debtor, and by David Perry in his individual capacity.

44.    The 1997 Promissory Note specified that the Note was secured by "Rodeo Canon Developments' 50% share in Building only."

45.    The 1997 Loan was secured by a 7th Trust Deed on the Real Property, recorded October 27, 1998.

46.    Neither the Debtor nor the Warnick Trustees obtained Beverly Rodeo's written authorization for the 7th Trust Deed, in direct contravention of the Amendment to Partnership Agreement as referenced in the recorded Memorandum of Agreement.

47.    Schedule A to the Debtor's Bankruptcy Schedules filed on or about November 10, 1999, provides in pertinent part:

1    The Debtor is the titleholder of record of the property.

2    The cash flow from the property is owned by the 9615

3    Brighton Way Partnership, a general partnership in

4    which the Debtor owns a 50% interest.

5    48.    In several writings filed after the Petition Date and prior to the

6    Conversion Date, the Debtor, as debtor-in-possession, represented and admitted that

7    the Real Property was the property of the Brighton Way Partnership.

8    49.    At a hearing held in the United States Bankruptcy Court on March

9    22, 2001, a sale of the Real Property for $10,500,000.00 (the "Sale Proceeds") was

10    approved.

11

12    ### FIRST CROSS-CLAIM FOR RELIEF

13    **(For Breach of Contract and Attorneys' Fees Against the Debtor)**

14

15    50.    Cross -plaintiffs repeat the allegations in paragraphs 1-49 of this

16    Cross-complaint with the same effect as if set forth here.

17    51.    A written partnership agreement existed between the Debtor and

18    Beverly Rodeo.

19    52.    Beverly Rodeo performed under the Agreement.

20    53.    Cross-plaintiffs are informed and believe and thereon allege that the

21    Debtor breached the contract by causing the 6th and 7th Trust Deeds to be placed

22    upon the Real Property and by extending the term of and increasing the interest rate

23    on the 1993 Loan.

24    54.    Cross-plaintiffs have been damaged as a result of the Debtor's breach

25    in an amount yet to be determined and Cross-plaintiffs are entitled to recover said

26    amount.  Cross-plaintiffs are also entitled, pursuant to the terms of the agreement to

27    reasonable attorneys' fees and court costs.

28    / / /

## SECOND CROSS-CLAIM FOR RELIEF

**(For Conversion against the Debtor, David Perry and Danny Perry)**

55.     Cross-plaintiffs repeat the allegations in paragraphs 1-54 of this Cross-complaint with the same effect as if set forth here.

56.     Cross-plaintiffs are informed and believe and thereon allege that the Debtor and David Perry dispossessed the Cross-plaintiffs of their property rights by willfully and without legal justification encumbering the Real Property.

57.     Cross-plaintiffs are informed and believe and thereon allege that Danny Perry authorized, directed or participated in the encumbering of the Real Property, or knew or should have known of the encumbering of the Real Property and failed to take or order the appropriate action to avoid harm to the Cross-plaintiffs.

58.     Cross-plaintiffs have sustained damages as a result of Cross-Defendants' actions in an amount to be determined and are entitled to recover that amount.

## THIRD CROSS-CLAIM FOR RELIEF

**(For Breach of Fiduciary Duty Against the Debtor, David Perry,**
**and Danny Perry)**

59.     Cross-plaintiffs repeat the allegations in paragraphs 1-58 of this Cross-complaint with the same effect as if set forth here.

60.     Cross-plaintiffs are informed and believe and thereon allege that by virtue of the Articles of Partnership dated January 1, 1990 and the Amendment to Partnership Agreement dated November 1, 1993, entered into between the Debtor and Beverly Rodeo, the Debtor, David Perry and Danny Perry owed fiduciary duties to Beverly Rodeo and to those who had interests in Beverly Rodeo, including Yassian.

/ / /

E:\CLIENT\1417\1417-20.adv.wpd\1417-20.002.wpd
.1:00 am) jc

30

61.     Cross-plaintiffs are informed and believe and thereon allege that the Debtor was prohibited from further encumbering the Real Property after November 4, 1993 without prior written agreement by Beverly Rodeo.

62.     Cross-plaintiffs are informed and believe and thereon allege that the Debtor, David Perry and Danny Perry violated their fiduciary duties to Cross-plaintiffs by wrongfully encumbering the Real Property.

63.     As a direct result of the above-described actions, the Cross-plaintiffs have been harmed in that the Real Property was encumbered for the profit and unjust enrichment of the Cross-defendants, making Cross-defendants liable to the Cross-plaintiffs in an amount subject to proof at trial.

64.     Cross-plaintiffs are also entitled to punitive damages to the extent allowed by law.

## FOURTH CROSS-CLAIM FOR RELIEF

### (For Conversion against David Perry, Danny Perry, and Delila Urman)

65.     Cross-plaintiffs repeat the allegations in paragraphs 1-64 of this Cross-complaint with the same effect as if set forth here.

66.     Cross-plaintiffs are informed and believe and thereon allege that David Perry and Delila Urman dispossessed the Cross-plaintiffs of their property rights by willfully and without legal justification taking funds out of the Brighton Way Partnership Account.

67.     Cross-plaintiffs are informed and believe and thereon allege that Danny Perry authorized, directed or participated in the wrongful taking of money out of the Brighton Way Partnership Account, or knew or should have known of the wrongful taking of money out of the Brighton Way Partnership Account and failed to take or order the appropriate action to avoid harm to the Cross-plaintiffs.

/ / /

1       68.    Cross-plaintiffs have sustained damages as a result of Cross-

2 Defendants' actions in an amount to be determined and are entitled to recover that

3 amount.

4

5                   **FIFTH CROSS-CLAIM FOR RELIEF**

6     **(For Breach of Fiduciary Duty Against David Perry, Danny Perry, and**

7                           **Delila Urman)**

8

9       69.    Cross-plaintiffs repeat the allegations in paragraphs 1-68 of this

10 Cross-complaint with the same effect as if set forth here.

11       70.    Cross-plaintiffs are informed and believe and thereon allege that by

12 virtue of her employment as manager of the Real Property, Delila Urman owed

13 fiduciary duties to Brighton Way Partnership, Beverly Rodeo and to those who had

14 interests in Beverly Rodeo, including Yassian.

15       71.    Cross-plaintiffs are informed and believe and thereon allege that by

16 virtue of the Articles of Partnership dated January 1, 1990 and the Amendment to

17 Partnership Agreement dated November 1, 1993, entered into between the Debtor

18 and Beverly Rodeo, the Debtor, David Perry and Danny Perry owed fiduciary duties

19 to Beverly Rodeo and to those who had interests in Beverly Rodeo, including Yassian.

20       72.    Cross-plaintiffs are informed and believe and thereon allege that

21 David Perry, Danny Perry and Delila Urman violated their fiduciary duties to Cross-

22 plaintiffs by wrongfully causing money to be taken out of the Brighton Way

23 Partnership Account.

24       73.    As a direct result of the above-described actions, the Cross-plaintiffs

25 have been harmed, making David Perry, Danny Perry and Delila Urman liable to the

26 Cross-plaintiffs in an amount subject to proof at trial.

27       74.    Cross-plaintiffs are also entitled to punitive damages to the extent

28 allowed by law.

\\E\CLIENT\1417\1417-20.adv.wpd\1417-20.002.wpd
(11:00 am) jc
                                    32

## SIXTH CROSS-CLAIM FOR RELIEF

## (For Unjust Enrichment, Accounting and Constructive Trust Against the Debtor, David Perry and Danny Perry)

75.   Cross-plaintiffs repeat the allegations in paragraphs 1-74 of this Cross-complaint with the same effect as if set forth here.

76.   As a result of the wrongful acts of the Debtor, David Perry and Danny Perry, Cross-defendants have been unjustly enriched and benefitted in an amount they may not justly retain, but which is at least equivalent to the amount of the 1996 Loan, the 1997 Loan, the additional interest on the 1993 Loan, and the moneys wrongfully taken out of the Brighton Way Partnership Account. This amount is an unknown amount to be determined at trial.

77.   Cross-defendants are under an obligation to pay Cross-plaintiffs the entire amount by which they have been unjustly enriched and benefitted.

78.   By reason of Cross-defendants' wrongful acts as alleged herein, in addition to all other relief, Cross-plaintiffs are entitled to the Court's ruling that:

(a)   Cross-plaintiffs are entitled to an accounting of all monies received, directly and indirectly by the Debtor, David Perry and Danny Perry, as a result of the 1996 Loan, the 1997 Loan, the Extension to the 1993 Loan, and the wrongful taking of funds from the Brighton Way Partnership Account;

(b)   Cross-defendants are involuntary trustees holding all such sums under a constructive trust for the benefit of Cross-plaintiffs with a duty to transfer those sums to the Cross-plaintiffs;

(c)   Cross-defendants are involuntary trustees holding all such sums under a resulting trust for the benefit of Cross-plaintiffs with a duty to transfer those sums to the Cross-plaintiffs; and

/ / /

/ / /

1    (d)   Cross-defendants are involuntary trustees holding all such

2 sums under an express trust for the benefit of Cross-plaintiffs with a duty to transfer

3 those sums to the Cross-plaintiffs.

4

5                    **SEVENTH CROSS-CLAIM FOR RELIEF**

6    **(For Declaratory Relief against William and Ann Warnick, as Trustees of**

7         **the William and Ann Warnick Family Trust, Allan Warnick,**

8                           **and Jill Warnick)**

9

10   79.   The Cross-plaintiffs repeat the allegations in paragraphs 1-78 of this

11 Cross-complaint with the same effect as if set forth here.

12   80.   At all material times, the Real Property was property of the Brighton

13 Way Partnership.

14   81.   Brighton Way Partnership's ownership interest in the Real Property

15 was reflected in the public record, or the public record was sufficient to put third

16 parties on notice of the Partnership's ownership interest

17   82.   Neither the Debtor, nor David Perry nor Danny Perry had the legal

18 authority to encumber the Real Property after November 1, 1993 without the written

19 consent of Beverly Rodeo.

20   83.   The limitation on the Debtor's, David Perry's and Danny Perry's

21 ability to encumber the Real Property was reflected in the public record, or the public

22 record was sufficient to put third parties on notice of the limitation.

23   84.   At the time of the 1996 Loan, the 1997 Loan and the Extension to the

24 1993 Loan, Allan Warnick, Jill Warnick and William and Ann Warnick, as Trustees

25 of the William and Ann Warnick Family Living Trust (the "Warnicks") were on notice

26 of the Brighton Way Partnership's ownership interest in the Real Property and the

27 Debtor's, David Perry's and Danny Perry's inability to encumber the Real Property

28 without the written consent of Beverly Rodeo.

I:\HOME\CLIENT\1417\1417-20.adv.wpd\1417-20.002.wpd
/18/01 (11:00 am) jc                                        34

85.    The Cross-plaintiffs are entitled to a declaration from the Court that the Brighton Way Partnership's ownership interest in the Real Property is not encumbered by the 6th Trust Deed, the 7th Trust Deed, and the increase to the 2nd Trust Deed caused by the Extension to the 1993 Loan.

86.    The Cross-plaintiffs are entitled to a declaration from the Court that Beverly Rodeo's partnership interest in the Brighton Way Partnership is not encumbered by the 6th Trust Deed, the 7th Trust Deed, and the increase to the 2nd Trust Deed caused by the Extension to the 1993 Loan.

87.    The Cross-plaintiffs are entitled to a declaration from the Court that the 6th Trust Deed, the 7th Trust Deed, and the increase to the 2nd Trust Deed caused by the Extension to the 1993 Loan do not encumber Beverly Rodeo's interest in the proceeds of the Sale of the Real Property or the Brighton Way Partnership's interest in the proceeds of the Sale of the Real Property.

## EIGHTH CROSS-CLAIM FOR RELIEF

### (For Breach of Contract against David Perry and Reefshare, Ltd.)

88.    Cross-plaintiffs repeat the allegations in paragraphs 1-87 of this Cross-complaint with the same effect as if set forth here.

89.    A written agreement existed between Reefshare Ltd., David Perry, the Debtor and Beverly Rodeo regarding the $400,000.00 loan.

90.    Beverly Rodeo performed under the Agreement.

91.    Cross-plaintiffs are informed and believe and thereon allege that David Perry and Reefshare, Ltd. breached the contract by failing to pay the $400,000.00 Loan with interest.

92.    Cross-plaintiffs have been damaged as a result of Reefshare Ltd.'s and David Perry's breach in an amount yet to be determined, but which is not less than $400,000.00, and Cross-plaintiffs are entitled to recover said amount.

# PRAYER FOR RELIEF RE: COUNTERCLAIM

WHEREFORE, the Cross-plaintiffs pray for judgment as follows:

On the First Cross-claim for Relief:

    (a)    For a determination of damages as a result of the Debtor's breach; and

    (b)    For reasonable attorneys' fees and court costs.

On the Second Cross-claim for Relief:

    (a)    For a determination of damages as a result of Cross-defendants' actions; and

    (b)    For reasonable attorneys' fees and court costs.

On the Third Cross-claim for Relief:

    (a)    For a determination of damages as a result of Cross-defendants' actions;

    (b)    For punitive damages to the extent allowed by law; and

    (c)    For reasonable attorneys' fees and court costs.

On the Fourth Cross-claim for Relief:

    (a)    For a determination of damages as a result of Cross-defendants' actions; and

    (b)    For reasonable attorneys' fees and court costs.

On the Fifth Cross-claim for Relief:

    (a)    For a determination of damages as a result of Cross-defendants' actions;

    (b)    For punitive damages to the extent allowed by law; and

1     (b)    For reasonable attorneys' fees and court costs.

2

3   **On the Sixth Cross-claim for Relief:**

4     (a)    For a determination of the amount by which Cross-defendants have

5   been unjustly enriched;

6     (b)    For an accounting of all monies received, directly and indirectly by the

7   Debtor, David Perry and Danny Perry, as a result of the 1996 Loan, the 1997 Loan,

8   the Extension to the 1993 Loan, and the wrongful taking of funds from the Brighton

9   Way Partnership Account;

10     (c)    For a determination that Cross-defendants are involuntary trustees

11   holding all such sums under a constructive, a resulting trust and/or an express trust

12   for the benefit of Cross-plaintiffs with a duty to transfer those sums to the Cross-

13   plaintiffs;

14     (d)    For reasonable attorneys' fees and court costs.

15

16   **On the Seventh Cross-claim for Relief:**

17     (a)    For a declaration from the Court that the 6th Trust Deed, the 7th

18   Trust Deed, and the increase to the 2nd Trust Deed caused by the Extension to the

19   1993 Loan do not encumber the interests of Beverly Rodeo or the Brighton Way

20   Partnership in the proceeds of the Sale of the Real Property.

21

22   **On the Eighth Cross-claim for Relief:**

23     (a)    For a determination of damages as a result of David Perry's and

24   Reefshare Ltd.'s breach.

25   / / /

26   / / /

27   / / /

28   / / /

1 | <u>On All Cross-claims for Relief:</u>

2 |     (a)   For an award to the Counter-plaintiffs of costs of this action and

3 | attorneys' fees as the law may allow.

4 |     (b)   For such other relief as the Court may deem just and proper.

6 | DATED: April 18, 2001

Respectfully submitted,

WEINSTEIN & EISEN
A Professional Corporation

By _____
ALEXANDRA P. OLENCZUK
Attorneys for Fred Yassian and Beverly
Rodeo Development Corporation

## PROOF OF SERVICE

I declare that I am over eighteen years of age and that I am not a party to this action.
My business address is Fox Plaza, 2121 Avenue of the Stars, Thirty-Third Floor,
Los Angeles, California 90067-5061.

On August 23, 2005, I served a true and correct copy of the following document(s) on
the parties indicated on the attached list by using the methods indicated below:

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF THE CHADORCHI PARTIES'
(A) OPPOSITION TO THE TRUSTEE'S MOTION FOR ORDER APPROVING
AGREEMENT TO RESCIND SETTLEMENT Etc. [Dkt. No. 491] AND  (B)
CONDITIONAL OPPOSITION TO THE TRUSTEE'S MOTION FOR AUTHORITY TO
SELL CERTAIN RIGHTS OF ACTION Etc. [Dkt. No. 492]**

☒    **By First-Class Mail**:  I am readily familiar with the business practice of
collection and processing of correspondence for mailing with the United States
Postal Service.  I know that the document(s) listed above was deposited with the
United States Postal Service on the same day this declaration was executed in
the ordinary course of business.  I know that the above-referenced document(s)
were placed into the envelopes, the envelopes were sealed and addressed as
set forth on the attached list and, with postage thereon fully prepaid, the
envelopes were placed for collection and mailing on this date, following ordinary
business practices, in the United States mail at Los Angeles, California.

☒    **By Email Transmission:** The above-referenced document was
transmitted to the person(s) indicated with an "*" on the attached list by email
transmission at the email addresses listed on the attached list.

I declare that I am employed in the office of a member of the bar of this Court at whose
direction the service was made and that this declaration was executed at Los Angeles,
California on August 23, 2005.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Joanne C. Nadeau

79496.1

# MAILING LIST

David R. Weinstein, Esq.*
Gil Hopenstand, Esq.
Weinstein, Eisen & Weiss LLP
1925 Century Park East, Suite 1150
Los Angeles, CA  90067-2712
Email:  dweinstein@weineisen.com

Samuel R. Maizel, Esq.*
James K.T. Hunter, Esq.
Pachulski, Stang, Ziehl, Young, Jones
    & Weintraub, P.C.
10100 Santa Monica Boulevard, 11th
Floor
Los Angeles, CA  90067-4100
Email: smaizel@pszyj.com

Steven Jay Katzman, Esq.
Jill Sturtevant, Esq.
Dare Law, Esq.
United States Trustee
725 S. Figueroa Street , 26th Floor
Los Angeles, CA 90017

Louis J. Khoury, Esq.
1801 Century Park East, Suite 2400
Los Angeles, CA 90067-2326

Robert C. Haase, Jr., Esq.
Robins, Kaplan, Miller & Ciresi LLP
2049 Century Park East, Suite 3700
Los Angeles, CA  90067

David A. Ring, Esq.
Douglas J. Collodel, Esq.
Sedgwick, Detert, Moran & Arnold LLP
801 South Figueroa Street, 18th Floor
Los Angeles, California 90017-5556

Robert T. Kugler, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015

John D. Wilson, Esq.
Schwartz, Wisot & Wilson
1875 Century Park East, Suite 850
Los Angeles, CA  90067

Rodney T. Lewin, Esq.
Randall A. Spencer, Esq.
Law Offices of Rodney T. Lewin
8665 Wilshire Boulevard
Suite 210
Beverly Hills, CA  90211

Peter T. Steinberg, Esq.
Steinberg, Detert, Morgan & Arnold LLP
501 Colorado Avenue
Suite 300
Santa Monica, CA  90401